In re JUDSON et al.

(Circuit Court of Appeals, Second Circuit. January 8, 1912.)

No. 75.

1. BANKRUPTCY (§ 148*)—ESTATE OF BANKRUPT—VESTING IN TRUSTEE—TIME.

Bankruptcy Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), provides that the trustee shall be vested with the title of the bankrupt as of the date he was adjudged a bankrupt to all property which prior to the filing of the petition he could by any means have transferred or which might have been levied on and sold under judicial process against him. *Held* that, while the trustee's title vests as of the date of the adjudication, such title is limited to the property which belonged to the bankrupt at the time of filing the petition.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 148.*]

2. BANKRUPTCY (§ 143*)—"PROPERTY"—INSURANCE POLICY.

Bankruptcy Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), provides that, when a bankrupt shall have an insurance policy which has a cash surrender value, he may, within 30 days after such value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his property under the bankruptcy proceedings; otherwise the policy shall pass to the trustee as assets. *Held*, that policies having a cash surrender value were governed by such provision, but that policies having no cash surrender value were not "property" within the section, and hence where a bankrupt committed suicide after the filing of an involuntary petition, but before the adjudication, leaving insurance policies, some of which had a small cash surrender value and others none, the bankrupt's executor was entitled to the proceeds of the policies from the trustee on paying to him the cash surrender value of the policies having such a value at the date of the filing of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*

For other definitions, see Words and Phrases, vol. 6, pp. 5693–5728; vol. 8, pp. 7768–7770.]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings of Alfred M. Judson and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

others, individually, etc. On petition of A. Leo Everett, as trustee in bankruptcy, to turn over to the executor of the bankrupt Judson's will, the sum of $8,611.34, as the proceeds of certain policies of insurance on his life. Affirmed.

See, also, 188 Fed. 702.

The following facts appear upon the record:

On December 17, 1910, an involuntary petition in bankruptcy was filed against said Judson and other members of his firm.

On December 23, 1910, said Judson entered a notice of his appearance in the bankruptcy proceedings.

On January 4, 1911, said Judson committed suicide.

On January 9, 1911, the firm and all its members were adjudicated bankrupts.

On February 9, 1911, a trustee in bankruptcy was elected.

Prior to the filing of the involuntary petition said Judson had three insurance policies upon his life which continued in force until his decease. The trustee has collected the amounts due upon these policies and the question to be determined upon this petition for revision is whether such moneys belong to the trustee in bankruptcy or to said Judson's personal representatives. Two of the policies had together a cash surrender value of $63.80 at the time of filing of the petition in bankruptcy. The third policy had no cash surrender value. It is conceded that the trustee is entitled to said $63.80.

Philbin, Beekman, Menken & Griscom (S. Stanwood Menken, Charles K. Beekman, and William C. Armstrong, of counsel), for petitioner.

Ball & Ludlow (G. Ludlow, of counsel), for respondent.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). [1] The first inquiry in this case should be one of time; the second, one of property. We should ascertain at the outset the time before which the property of a bankrupt becomes his creditors' and after which he is entitled to retain it as his own. Having fixed the date of cleavage it will then be for us to determine the property which passed to the trustee in this case. And we shall find that the answers to both inquiries depend upon the interpretation to be placed upon a single provision of the bankruptcy act.[1]

Referring to the language of the provision in question as shown in the footnote, it seems clear that a trustee in bankruptcy takes title

[1] "Section 70. a. The trustee of the estate of a bankrupt, * * * shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt. * * * to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him. Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated and continue to hold, own and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

as of the date of the adjudication, not to the property owned by the bankrupt at that time, but to the property owned at the time of the filing of the petition. The trustee's title vests, it is true, as of the date of the adjudication, but the title which vests is limited to the property belonging to the bankrupt at the time of the commencement of the proceedings—the filing of the petition. The one date determines when the title vests; the other, the property to which the title vests. Property acquired by the bankrupt after the filing of the petition is not—to use the language of the act—property which "prior to the filing of the petition he could by any means have transferred." We think it clear that the time of the filing of the petition in this case should be taken as the date of cleavage determining the property passing to the trustee and through him to the creditors.

[2] Examining now into the situation of these life insurance policies at the time of the filing of the petition in bankruptcy we find, as already stated, that two of them had a small, and one of them no, cash surrender value. The two policies having a cash surrender value come within the express terms of the proviso of the statute and although the bankrupt died before making his election, we think that his executor had the right to tender the cash surrender value to the trustee and became entitled to the benefit of the policies.

But we do not place our decision with respect to these policies solely upon the ground that they had a trifling cash surrender value at the time of the filing of the petition and so came expressly within the provision. We place it also upon a broader ground which applies likewise to the policy having no cash surrender value. We think that the statute in question clearly indicates an intention upon the part of Congress to permit bankrupts to retain the advantages of existing life insurance policies provided they will pay to their trustees all that could be obtained by surrendering such policies at the commencement of the proceedings. In the case of policies having a cash surrender value, the proviso covers the case. In the case of policies having no cash surrender value, the proviso does not apply expressly, but reading it in connection with the other provisions we think that such policies are not "property" within the meaning of the statute, but are in the nature of personal rights. True, they are "property" within technical definitions of that term. But they represent nothing more than the right to pay future premiums at a fixed rate. Their value is altogether speculative, and in our opinion it was not the intention of Congress that bankrupts should be deprived of their policies to enable trustees of bankrupt estates to use their funds to speculate with.

The questions just considered are practically disposed of by the decision of this court in the very recent case of Burlingham v. Crouse, 181 Fed. 479, 104 C. C. A. 227. In that case it appeared that a bankrupt held certain life insurance policies on which the insurance companies had loaned the full amount of their surrender value and that the bankrupt died shortly after the adjudication. We held that the policies did not pass to the bankrupt estate and said:

"It is the object of the statute to place in the hands of the trustee, for distribution among the creditors, every dollar which the bankrupt could collect. Therefore, if he has a policy on which money could be collected by sur-

rendering it, he must turn over such policy to the trustee who may thereupon surrender and collect. Having done this, there can be, of course, no possible objection to the bankrupt effecting new insurance on his own life, if some friend or relative chooses to assist him to pay the premiums. But his doing so would involve one element of hardship. The old policy may have been taken out many years before, when the assured was a young man and the annual premium low; for the new policy a much higher premium may have to be paid. Indeed, his condition of health might be such that he could not pass the examination and secure a new policy at all, and thus be unable to secure something for his family in the event of his death. It seems quite apparent from the language of the proviso that Congress was not solicitous to subject the unfortunate bankrupt to any such unnecessary hardship, and so has provided that if there is paid or secured to the trustee for the creditors all that the bankrupt could obtain by surrendering the old policy he may hold and carry such policy."

It is true that in the Crouse Case the bankrupt died after adjudication but, as we have seen, the essential time is the date of the petition. So, in that case the policies had a technical cash surrender value although the insurance companies had loaned up to it. We do not, however, think that the Crouse decision is limited by this last consideration, but if it is, we now take the further step of holding that there is no distinction, so far as the question here presented is concerned, between a policy having no surrender value and one having a technical surrender value the amount of which the insured has borrowed from the insurance company.

The order of the District Court is affirmed with costs.