---

### In re LEVY.

(District Court, E. D. New York.   November 17, 1915.)

1. BANKRUPTCY ☞417—DISCHARGE—RIGHT TO ATTACK—"PARTY IN INTEREST."
    A creditor, whose claim is entirely wiped out by bankrupt's discharge, but who would have the right to proceed against the debtor if the discharge were revoked, is within Bankr. Act July 1, 1898, c. 541, § 15, 30 Stat. 550 (Comp. St. 1913, § 9599), permitting any "party in interest," not guilty of undue laches, to ask to have the discharge revoked for fraud.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. ☞417.]

2. BANKRUPTCY ☞152—ASSETS—LIFE POLICY—ASSIGNMENT—INTEREST OF TRUSTEE.
    If, after death of bankrupt, his discharge be set aside, and the assignment of policies on his life be successfully attacked, their status, for the purpose of determining the interest of the trustee, would be as of the date of the adjudication of bankruptcy.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194; Dec. Dig. ☞152.]

3. BANKRUPTCY ☞143—ASSIGNMENT OF LIFE POLICY—SETTING ASIDE—REDEMPTION.
    If an assignment by bankrupt and his wife of policies on his life was void, their return after his death would give his wife the right to re-

deem them within 30 days after determination of the surrender value, as of the date of the adjudication, as provided by Bankr. Act, § 70, subd. 5 (Comp. St. 1913, § 9654).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. ☞143.]

4. BANKRUPTCY ☞146—CONCEALMENT OF ASSETS—ASSIGNMENT OF LIFE POLICY—INTEREST OF TRUSTEE.

That the schedules made no mention of bankrupt having assigned policies on his life would not entitle the trustee, after bankrupt's death, to the entire amount of insurance, as concealed property and increment thereof; the assignment having been in good faith, and the parties under a mistaken idea of his right to make it, and to leave out of the schedules the details thereof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 193; Dec. Dig. ☞146.]

5. BANKRUPTCY ☞417—DISCHARGE—ATTACK—LACHES.

A creditor is not barred by laches from attacking, under Bankr. Act, § 15, the discharge, having acted in a month after ascertaining the facts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. ☞417.]

6. BANKRUPTCY ☞417—DISCHARGE—REVOCATION—FRAUD.

The cash surrender value, at the time of the adjudication, to which only the estate was entitled, of life policies assigned by bankrupt, being only $17, in which the objecting creditor, because not having filed a claim, would have no interest, and it having been the evident intent of the parties merely to protect the policies from lapsing, and thus save the benefit to the beneficiary of the past insurance, the transfer will not be held a fraud on creditors, as ground for setting aside, under Bankr. Act, § 15, the discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. ☞417.]

In Bankruptcy. In the matter of Albert E. Levy, bankrupt. On motion to vacate the discharge. Motion denied.

Joseph Rosenzweig, of New York City, for petitioner.
Simon & Weinstein, of Brooklyn, N. Y., for assignee.

CHATFIELD, District Judge. The bankrupt above named filed voluntary schedules and was adjudicated upon August 1, 1914. Discharge was granted October 30, 1914, and on August 25, 1915, the bankrupt died. On the 30th of July, 1914, the bankrupt, together with his wife, assigned, for a present consideration, to the wife's sister, certain insurance policies taken out, respectively, in 1902, 1904, and 1906. The premiums were paid by the assignee, so that the policies were in force at the time of the bankrupt's death, and the company stands ready to pay the amount of the policies over and above certain loans which had been made by the bankrupt and his wife prior to the date of the assignments. The insurance company states that one of these policies had on July 30, 1914, no surrender value, and the other two policies had surrender values aggregating $16.-72. None of these policies were listed in the schedules, and no estate passed into the hands of the trustee.

One of the creditors, who was scheduled, but did not seek to prove a claim in the estate, having learned of the existence of these in-

surance policies after the bankrupt's death, filed a petition, on October 1, 1915, to vacate the discharge upon the ground of fraud, asking that the proceedings then be opened with a view to obtaining the death claims payable on the policies. This creditor seeks, not only the surrender value, but the death benefit itself, upon the theory that the assignee and beneficiary were parties to the fraud, and therefore that the estate is entitled to the benefit of anything done by the assignee in pursuance of the fraud.

[1] The first question raised is the right of this creditor to attack the discharge. Section 15 provides that any party in interest, who has not been guilty of undue laches, may ask to have the discharge revoked on the ground of fraud. It must be held that a creditor whose claim is wiped out by the discharge, but who would have the right to proceed against the debtor if the discharge were revoked, is a party in interest, so far as the discharge was concerned. The words "party in interest," in section 15, cannot be confined merely to those persons who will share in the distribution of the estate. A creditor whose claim is entirely wiped out by the discharge has more interest in the validity of that discharge than one whose claim is but partially wiped out, and who will in any event receive a dividend if there is any estate to distribute in bankruptcy.

[2] The next question which is raised is that presented by the death of the bankrupt since his discharge. The case of Everett, Trustee, v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154, affirming 192 Fed. 834, 113 C. C. A. 158, disposes of this contention. If the discharge should be set aside and the assignment of the policies successfully attacked, their status for the purpose of determining the interest of the trustee would be as of August 1, 1914, and not that of the later date, when the bankrupt's death affected the liability of the insurance company, but did not change the surrender values prior to that time.

[3] This also disposes of the next question in the case. If the bankrupt could not make the assignment, and if the assignment is void, then the return of the policy would give the bankrupt or his wife the right to redeem the same within 30 days after determination of the surrender value, in accordance with the provisions of section 70, subd. 5.

[4] It may be inferred that the trustee and the attacking creditor rest their demand upon the proposition that the bankrupt, his wife, and his assignee, by their wrongdoing, have made it impossible for the trustee to take advantage of the provisions of section 70, subd. 5, and that therefore the estate is entitled, not only to recover the damage which has been suffered from their action, but also to recover any benefits which may have been received by the bankrupt or the assignee from the wrongdoing.

It is true that concealed property, with any accruals or increments belonging to the property, might be recovered from the party guilty of concealing these assets. But if the accruals or benefits would in any event have belonged to the parties guilty of the concealment, and if the only damage to the estate was the loss of the surrender value,

then, in equity, the real position of the parties should control, and the parties be merely restored to the position which they would have occupied, if that can fairly be done.

But in the present case the position of the assignee is even stronger, for the reason that the parties claim the assignment to have been made by the bankrupt in good faith, for a cash consideration of $100. Inasmuch as the bankrupt is dead, the evidence presented would seem to show at most that the parties were laboring under a mistaken idea as to his right to make the transfer and to leave out of the schedules the details of this transaction. Under such circumstances, the estate could recover only that to which it was rightfully entitled if the persons were placed in their original situation.

[5] The defense of laches is further urged by the assignee, but as the petition was verified September 28, 1915, upon facts ascertained after the death of the bankrupt in August, and as the surrender value of these policies was not learned until the beginning of these proceedings, it is evident that there was no laches on the part of the creditor; nor should the 30 days provided for by section 70, subd. 5, be held to have begun until this motion is properly disposed of. The cases of Burlingham v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, In re L. Hammel & Co., 221 Fed. 56, 137 C. C. A. 80, Milkman v. Arthe, 223 Fed. 507, —— C. C. A. ——, as well as Everett, Trustee, v. Judson, supra, limit the right of the trustee in any event to attack the transfer of the surrender values upon the two policies which had such a value on August 1, 1915, for the sum of $100.

[6] The objecting creditor did not consider it worth while to file a claim in bankruptcy. He therefore would have no interest in this $16.72 if it were returned. It would seem, therefore, that the value of these policies to the estate was so small, and the evident intent of the parties to protect the policies from lapsing, and thus save the benefit to the beneficiary of the past insurance, is so persuasive, that the transfer should not be held a fraud upon creditors, and the discharge in this case cannot now be set aside for that reason.

The motion to vacate the discharge will therefore be denied.