### In re SAMUELS.

(Circuit Court of Appeals, Second Circuit. November 14, 1916.)

No. 35.

BANKRUPTCY ☞143(11)—RIGHTS OF TRUSTEE—INSURANCE.

    A bankrupt procured policies of life insurance, payable to his niece and sister, one of which provided that, in the event of the death of the beneficiaries, the proceeds should be payable to the estate of the bankrupt, and all of which reserved in the bankrupt the authority to change the beneficiaries. Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (Comp. St. 1913, § 9654), declares that the trustee of the estate of a bankrupt shall be vested by operation of law with the title of the bankrupt to all property which, prior to the petition, he could by any means have transferred, or which might have been levied on or sold under judicial process against him, provided that, when a bankrupt shall have any insurance policy which has a cash surrender value payable to the insured, his estate, or personal representatives, he may, within 30 days after the surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of creditors; otherwise, the policy shall pass to the trustee as assets. *Held* that, as none of the policies were payable to the bankrupt or his estate, and as it would be necessary to compel the bankrupt to change the beneficiaries before the trustee could obtain the surrender value of the policies, the trustee is not entitled to the surrender value of the policies, or, in event of the bankrupt's failure to pay the same, to the policies themselves.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 201; Dec. Dig. ☞143(11).]

    Hough, Circuit Judge, dissenting.

Petition to Revise Order of the District Court for the Southern District of New York.

In the matter of Elias W. Samuels, bankrupt. Petition by Samuel C. Cohen, as trustee, to revise order of the District Court refusing the petition of the trustee that the bankrupt be compelled to pay him the cash values of certain policies of life insurance, or surrender the policies. Orders affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Samuel Sturtz, of New York City, for bankrupt.

Lawrence B. Cohen, of New York City, for petitioner.

Before COXE, WARD, and HOUGH, Circuit Judges.

WARD, Circuit Judge. This is a petition to revise three orders of the District Court refusing the petition of the trustee that the bankrupt be compelled either to pay him the cash values of certain policies of life insurance, or to surrender the policies to him. They were as follows:

One dated May 1, 1909, in the Penn Mutual Insurance Company, for $3,000, payable one-half to the bankrupt's sister and one-half to his niece, and in case they or either of them predecease him, their shares or her share to be payable to his executors, administrators, or assigns; he reserving full power to change the beneficiary at any time. After payment of three years' premiums, the company agrees to loan on its policies a sum equal to the full reserve to the end of the current policy year, or to pay the same sum as its surrender value upon surrender of the policy. December 17, 1912, the company made a loan on the policy to the bankrupt of $310.49, and is ready, on surrender of the policy, to cancel the loan and pay $193.85 in cash.

Another policy was in the Mutual Life Insurance Company of New York, dated June 24, 1905, for $3,000, payable originally to the bankrupt's estate, and afterwards changed so as to be payable to his sister as the beneficiary. December 30, 1912, the bankrupt borrowed $555 of the company on the policy. The company is willing, upon the consent of both the insured and the beneficiary, to pay its cash value, $753, subject to payment of the loan, or, in case the beneficiary do not consent, the insured may change the beneficiary to himself and collect the cash value. In this company the surrender value and the loan value are the same.

Another policy is in the Equitable Life Assurance Society for $1,000, dated December 28, 1899, payable to the bankrupt's sister; he reserving power to change the beneficiary. In case of lapse, after the payment of three years' premiums, the company agrees to pay on its policies a cash surrender value, which amounted in this case on December 28, 1915, to $396, or, if there be no lapse, to loan $429 on the policy.

The District Judge relied upon the decision of the Supreme Court in Burlingham v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, and our decision in Re L. Hammel & Co., 221 Fed. 56, 137 C. C. A. 80.

Section 70(a) of the Bankruptcy Act reads:

"Sec. 70. *Title to Property.*—*a* The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value

payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets. * * *"

The argument for the trustee would be quite convincing, viz. that the policies passed to the trustee as property which prior to the filing of the petition the bankrupt could have transferred or which could have been levied upon and sold as his, but for the special proviso as to the policies of insurance. The question is one of the construction of this proviso in the statute. The Supreme Court, in Burlingham v. Crouse, pointed out that it had been construed by the courts in two different ways, viz.:

First, that all policies on the life of a bankrupt payable to him or his estate were to be treated as being property which the bankrupt could have transferred, or which could have been levied on and sold as his, except that the bankrupt might retain those having a surrender value on paying this value to the trustee. The theory of this construction was that Congress enacted the proviso as an exception out of special tenderness to the bankrupt. We took this view in Re Coleman, 136 Fed. 818, 69 C. C. A. 496; Matter of White, 174 Fed. 333, 98 C. C. A. 205, 26 L. R. A. (N. S.) 451; Matter of Hettling, 175 Fed. 65, 99 C. C. A. 87.

Second, that no policies payable to the bankrupt or his estate passed to the trustee, except such as have a surrender value and they only to the extent of the surrender value, if the bankrupt or his representatives or his assigns pay that amount to the trustee within the time prescribed. Subsequently, in Burlingham v. Crouse, 181 Fed. 479, 104 C. C. A. 227, and in Re Judson, 192 Fed. 834, 113 C. C. A. 158, we took the latter view. The Supreme Court affirmed these decisions (Burlingham v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. [N. S.] 148; Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. [N. S.] 154), proceeding upon the theory that in enacting the proviso Congress had in mind, not simply the bankrupt, but the nature of life insurance. It was thought Congress considered it questionable whether trustees ought to continue payment of premiums on policies which might run for years and so engage in a kind of speculation, delaying the winding up of estates, contrary to one of the fundamental objects of the Bankruptcy Act. On the other hand, if the trustee did not have the funds to pay premiums, the bankrupt might lose his insurance. The proviso was regarded, not as an exception in favor of the bankrupt, but as additional legislation, not limited to the bankrupt, but extending to his assigns. The creditors were thought to receive enough if they received the surrender value. None of the policies in question is payable to the bankrupt or his estate. In the Hammel Case we held that, though the bankrupt could have changed the beneficiary to himself and could then have borrowed the cash value of the policy from the company, he could not be compelled to do so.

This conclusion we think in line with the reasoning of the Supreme Court in Burlingham v. Crouse and in Everett v. Judson, and therefore the orders are affirmed.

HOUGH, Circuit Judge (dissenting). The rule on this subject is set forth in one sentence from Burlingham v. Crouse, 228 U. S. at page 473, 33 Sup. Ct. 568, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, viz.:

"As we have construed the statute, its purpose was to vest the surrender value in the trustee for the benefit of the creditors, and not otherwise to limit the bankrupt in dealing with his policy."

In that case there was at the time of bankruptcy no surrender value. Therefore there was nothing for the trustee to get. In Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154, there was a surrender value, and the trustee received it. In Re L. Hammel & Co., 221 Fed. 56, 57, 137 C. C. A. 80, 81, the policy possessed "no 'cash surrender value,' either provided for on its face, or established by concession and practice of the company." What we refused in that litigation was to compel the bankrupt to get the policy back from his wife and *borrow upon it* for the benefit of his estate. No other point was involved.

All of the policies in this case have a cash surrender value, and the only reason why that value is thought not to flow into the bankrupt's estate is the fact that the bankrupt prefers to keep the policies payable to beneficiaries chosen by himself, but whose rights he can cancel at will. This bankrupt is the assured; he is the only person who can obtain the surrender value; he can get it when he wants it, and no one else can. Samuel's property in these policies was transferable by him, was subject to be applied to the satisfaction of his debts under the laws of the state, and possessed (in the language of the Bankruptcy Act) "a cash surrender value payable to himself." It is so payable in equity, because he can get it—and bankruptcy is equity.

Therefore the order should be reversed, under the construction of the act as above quoted. For these reasons, I dissent from the judgment of the court.