## In re GANNON.

(Circuit Court of Appeals, Second Circuit. December 11, 1917.)

### No. 62.

BANKRUPTCY ⊂⊃143(11)—PROPERTY VESTING IN TRUSTEE—INSURANCE POLICY—"SURRENDER VALUE."

A special industrial insurance policy issued to a bankrupt contained a promise by insurer to pay to the executors, administrators, or assigns of the insured the amount of the policy, but contained a provision that the insurer might 'pay the amount of the policy to any relative by blood or connection by marriage of the insured, or any person appearing to the insurer to be equitably entitled to the same from having incurred an expense on behalf of the insured. Bankr. Act July 1, 1898, c. 541, § 70a, subds. 3, 5, 30 Stat. 565 (Comp. St. 1916, § 9654), invest the trustee of a bankrupt with title to all the property of the bankrupt which is not exempt, and all property which prior to the filing of the petition he could have transferred, or which might have been sold under judicial process, provided that, when a bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or his personal representatives, he may, within 30 days after the cash surrender value has been ascertained, pay or secure to the trustee the sum so stated and hold the policy free from claims of creditors. The insurer, while authorized to purchase its policies, made no practice of purchasing them, and in response to an inquiry offered to pay a fixed sum. The offer was not accepted, and on trial the testimony of the representative of the insurer indicated that it was not certain whether it would purchase such policy. Held, that while, under the act, policies will be deemed to have a surrender value and pass to the trustee whenever the bankrupt by his own efforts can obtain from the insurer any cash on cancellation of the policy, the amount determined in accordance with a fixed method of compensation, yet, as it did not appear that the insurer would purchase the policy in question, it cannot be deemed to have any surrender value payable to the bankrupt, and so did not pass to the trustee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cash Surrender Value.]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of the bankruptcy of John J. Gannon. An order of the referee directing the bankrupt's surrender of a life insurance policy, or in the alternative payment of the cash surrender value, having been reversed on petition to review (241 Fed. 733), Theodore H. Friend, Jr., as trustee in bankruptcy, petitions to revise. Affirmed.

The order involved was entered in that court on April 27, 1917, and it reversed the order of the referee in bankruptcy directing the bankrupt to deliver to the trustee a policy of insurance on his life, or pay to the trustee the sum of $156.75.

Theodore H. Friend, of New York City, for trustee and reviewing creditor.

William R. Hill, of New York City, for bankrupt.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge. The question in this case involves the right of a trustee in bankruptcy to a special industrial policy of insurance issued by the Prudential Insurance Company of America for $500 and is dated December 24, 1894. The promise of the policy is "to pay * * * unto the executors, administrators or assigns" of the insured the amount of the policy which "is issued and accepted subject to the following restrictions, conditions, and agreements * * *" printed thereon, the second of which reads as follows:

"Second. The company may pay the sum of money insured hereby to any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense in any way on behalf of the insured for his or her burial, or for any other purpose, and the production by the company of a receipt signed by any or either of said persons, or of other sufficient proof of such payment to any or either of them, shall be conclusive evidence that such sum has been paid to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied."

The trustee claims the policy under section 70a, subdivisions 3 and 5, of the Bankruptcy Act. That section invests the trustee of a bankrupt with title to all property of the bankrupt which is not exempt, and all—

"(3) Powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person. * * * (5) Property which prior to the filing of his petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets. * * *"

The District Judge thought that the trustee was not entitled to the policy, because by its terms it is not payable to the bankrupt, his estate, or personal representatives, in the sense of the statute, and he points out that:

"The policy is thus not payable absolutely to the executors or administrators of the insured, but, in the event that expenses have been incurred on behalf of the insured, the policy is payable to the executors and administrators only at the discretion of the company."

The right of the trustee to life insurance policies wherein the bankrupt, his estate, or personal representative is the beneficiary, and to policies wherein the bankrupt has reserved the right to change the beneficiary at will, have been more or less troublesome questions, which have caused the courts to disagree as to the meaning of the language of the bankruptcy act relating thereto.

In Holden v. Stratton, 198 U. S. 202, 214, 25 Sup. Ct. 656, 49 L. Ed. 1018, Mr. Justice White, now Chief Justice, called attention to the contrariety of opinion which existed in the lower federal courts as to the meaning to be attached to the words "cash surrender value" as found in subdivision 5 above set forth. He pointed out that some courts hold that the words mean a surrender value expressly stipulated by the contract of insurance to be paid, while other courts hold that the words embrace policies, even though a stipulation in respect to surrender value is not contained therein, where the policy possesses a cash value which would be recognized and paid by the insurer on the surrender of the policy. He declared that the latter theory harmonized with the present practice under the Bankruptcy Act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), and added that "as the question is not necessarily here involved, we do not expressly decide it."

In Hiscock v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771, a bankrupt at the time of adjudication had three life insurance policies payable to him at his death, his executors, administrators, or assigns, none of the policies contained any provision whereby upon default the company bound itself to pay a "cash surrender value" to any person. But it appeared from the testimony that as a matter of fact policies of the character of those in controversy had under the practice of the company cash surrender values, if offered for surrender within six months from the date of nonpayment of any premium. The District Court (131 Fed. 972) held that the policies had no cash surrender value within the meaning of section 70 of the Bankruptcy Act. That court said:

"There is no pretense that this custom of the insurer [the willingness of the company to pay money for the surrender of such policies] formed a part of the contract between the parties, or that the insured could enforce the payment of a surrender value, or the payment of anything, on the surrendering of the policy. In short, the insurer might be willing to pay a surrender value and might not. Such payment would be optional with it."

Again the court said:

"The association might be willing to pay one day, entirely unwilling the next. Is this the 'cash surrender value' spoken of in the Bankruptcy Law? This court thinks not."

The Supreme Court affirmed the decision of the Circuit Court of Appeals (142 Fed. 445, 73 C. C. A. 561), which reversed the District Court, and held that the provisions in section 70a of the Bankruptcy Act are not confined to policies in which the cash surrender value is expressly stated, but that they permit the redemption by the bankrupt

of policies having a cash surrender value by the concession or practice of the company issuing the same. Mr. Justice McKenna, who wrote the opinion, stated that:

"It was an actual benefit for which the statute provided, and not the manner in which it should be evidenced. And we do not think it rested upon chance concession. It rested upon the interest of the companies and a practice to which no exception has been shown. And that a provision enacted for the benefit of debtors should recognize an interest so substantial and which had such assurance was perfectly natural. What possible difference could it make whether the surrender value was stipulated in the policy or universally recognized by the companies?"

In Burlingham v. Crouse, 228 U. S. 459, 472, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, the court declared that it was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset; otherwise, to leave to the insured the benefit of his life insurance.

In Cohen v. Sammuels, 245 U. S. 50, 38 Sup. Ct. 36, 62 L. Ed. ——, decided by the Supreme Court this month and not yet officially reported, the bankrupt at the time of the adjudication held five life insurance policies. The trustee moved before the referee to require the bankrupt to deliver the policies to him or to pay him the cash surrender value as of the date of the adjudication. The policies were payable to certain relatives of the bankrupt as beneficiaries, and it was provided in each that the bankrupt reserved the absolute right to change the beneficiary without the latter's consent. The motions of the trustee were denied by the referee which action was affirmed by the District Court, and on appeal to this court we affirmed the ruling of the District Court. 237 Fed. 796, 151 C. C. A. 38. But the Supreme Court, while it stated that it felt the strength of the considerations which led to the conclusion which we reached, reversed the judgment. The decision seems to be based upon the fact that at the time of adjudication the policies had a cash surrender value which the companies were willing to pay to the bankrupt, who had in all of them the absolute right to change the beneficiaries. And the court pointed out that under section 70a, subdivision 3, the trustee is vested by operation of law with all powers which the bankrupt might have exercised for his own benefit, as well as all property that the bankrupt could transfer, and "especially as to insurance policies which have a cash surrender value payable to himself, his estate, or personal representative." And the court added:

"It is true the policies here are not so payable, but they can be or could have been so payable at his own will and by simple declaration. Under such conditions to hold that there was nothing of property to vest in a trustee would be to make an insurance policy a shelter for valuable assets and, it might be a refuge for fraud."

In the present case the policy is not in all respects like any which has been before the Supreme Court, and we must decide the question involved as best we can, in view of the language of the statute and of the decisions of the highest tribunal in so far as they have construed it.

The phrase "surrender value" we think must now be held to cover any and every policy which the insured by his own efforts, unassisted by any beneficiary or assignee, can obtain from the insurer in cash and

in cancellation of the policy at the date of the petition filed; the amount being determined in accordance with a fixed and definite method of compensation, uniform in all cases. The amount which can be thus obtained is the cash surrender value of the policy. It makes no difference whether the amount he can obtain is secured to him by a statute, or rests upon the mere willingness of the company to buy out the policy at the particular time. The material and important fact is that at the time of the adjudication the policy had a value which the company was willing to pay and which the bankrupt by his own act could obtain.

The theory of the law is that the creditors of a bankrupt are entitled to everything that a bankrupt could get out of the policy by his own act at the time he was put into bankruptcy. Any other construction would seem to make the policy a sacred property, of which the bankrupt could avail himself, while the creditors could not. It appears that while the policy herein involved did not expressly provide that the insurance company would pay the insured the cash surrender value upon the delivery of the policy to it for cancellation, yet a law of New Jersey (the company being there incorporated) had been passed which permitted it to purchase policies which it had issued. It appears that this company had not made a rule that it would, in all cases when so requested, pay the cash surrender value of its policies. It does not appear in this case that at the time of adjudication the company was willing to pay the cash surrender value of the policy herein involved. The most that appears is that the adjudication was on April 18, 1916, and that on the 9th of May the same year, in reply to an inquiry, the manager of the company wrote the trustee:

"We are willing on application to consider the purchase of the policy. If the premiums have been paid to date, the amount that we would be able to pay would be about $156.75, or the policy may be exchanged for a paid-up policy of $217, which would be more advantageous than a cash settlement. In case it is decided to accept either of the above offers, the matter should be taken up with the agent who collects the premiums, or our local superintendent, and the same will receive attention in the regular way. There are no cash dividends payable on the above policy; it being one of our special adult policies, which was issued at a reduced rate of premium, and upon which no cash dividend is payable. There is also no cash loan value attached to this policy."

This amounted to an offer to pay $156.75 for the surrender of the policy, on the application of the insured. But on the hearing before the referee, when the writer of the letter was examined in reference to it, the following occurred:

"Q. But in this letter of yours, dated May 9th, you say the company is willing on the application of the assured to consider the purchase of the policy? A. Yes. Q. As I take it, on that consideration you may desire to purchase, or you may not? A. Yes, because when we received those letters we did not know all the circumstances; we did not know the circumstances, for instance, of this bankrupt."

The offer to purchase was not accepted when made, and there is nothing in the record which shows certainly that the company would have purchased the policy at the time of the adjudication in bankruptcy, if it had been requested by the bankrupt. As there is no law which compels the company to pay the cash surrender value, and no

custom or usage on the part of this company to pay is shown, and as it is not established, as it seems to the majority of the court, that the company in this particular case would have taken over the policy and paid the cash surrender value, if the bankrupt had so requested at the time he was adjudicated a bankrupt, we should be going further than the Supreme Court has as yet gone if we should hold that this policy nevertheless had a cash surrender value at the date of the adjudication, which the bankrupt could then have reduced into his possession, and that the policy is accordingly vested in the trustee.

The order of the District Judge is affirmed.