# BURLINGHAM ET AL., TRUSTEES OF McINTYRE & COMPANY, *v.* CROUSE.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 184.   Argued March 12, 13, 1913.—Decided April 28, 1913.

In construing a general reference to property in the Bankruptcy Act, weight must be given to a proviso dealing with a special class of property.

A proviso may sometimes mean additional legislation and not be intended to have the usual and primary office of a proviso which is to limit generalities and exclude from the scope of the statute that which otherwise would be within its terms.

Life insurance is property, but it is peculiar property, and Congress

by the proviso in § 70a of the Bankruptcy Act intended that the bankrupt should have the benefit of all policies except to the extent of the actual cash value which could be realized by the trustee for the creditors.

Under the proviso in § 70a of the Bankruptcy Act, the assignee of a policy of insurance on the life of the bankrupt has the right to retain the policy on the same terms that the bankrupt might have retained it.

Under § 70a life insurance policies which have no cash surrender value, or on which the company has loaned the full surrender value so that the policy has no cash surrender value remaining, do not pass to the trustee as general property but remain the property of the bankrupt who is not limited in dealing with them.

181 Fed. Rep. 479, affirmed.

THE facts, which involve the construction of § 70a of the Bankruptcy Act and the ownership of policies of insurance on the life of a bankrupt, are stated in the opinion.

*Mr. Dorr Raymond Cobb*, with whom *Mr. Irving L. Ernst* was on the brief, for appellants:

The policies were assets of the bankrupt estate. They constituted property which the bankrupts could have transferred. *Matter of Slingluff*, 105 Fed. Rep. 502. And this irrespective of their value. *Re Brown*, 196 Fed. Rep. 758.

The defendant's position, that by an unlawful transfer he acquired a lien upon securities of the bankrupt which were not property and could not pass to the trustees as assets, is inconsistent and illogical.

As a matter of fact, however, the policies in question were valuable although their value at the time of the failure was contingent and uncertain. *Partridge* v. *Andrews*, 191 Fed. Rep. 325; *Kinzie* v. *Winston*, 56 Illinois, 56.

Bearing upon the definition of "property" see also:

*Wynehamer* v. *People*, 13 N. Y. 396; *Jackson* v. *Housel*, 17 Johns. (N. Y.) 280.

Life insurance policies belonging to the bankrupt and payable to his estate, pass to the trustee, § 70 of the Bankruptcy Act. *Morris* v. *Dodd*, 110 Georgia, 606, however, holds that no policy passes to the trustee unless it has a cash surrender value, and then subject to redemption by the bankrupt. The contrary is held in *Re Josephson*, 9 A. B. Reports, 345; 121 Fed. Rep. 142.

Prior to the present decision, it had been repeatedly held in the Second Circuit that the interest of the bankrupt in all policies of life insurance, payable to his estate, vested in the trustee subject to redemption by the bankrupt when they had either technically or as a matter of fact or custom, a cash surrender value upon his paying such value to the trustee. *In Re Coleman*, 136 Fed. Rep. 818; *Matter of White*, 174 Fed. Rep. 333; *Matter of Hettling*, 175 Fed. Rep. 65; *VanKirk* v. *Slate Co.*, 140 Fed. Rep. 38; *In Re Mertens*, 142 Fed. Rep. 445; aff'd *Hiscock* v. *Mertens*, 205 U. S. 202. See also Remington on Bankruptcy, § 1131, p. 644; *In Re Wright*, 157 Fed. Rep. 554; Bump on Bankruptcy, p. 368. Bearing on this question, see also: *Security Warehouse Co.* v. *Hand*, 206 U. S. 425, 426; *Knapp* v. *Milwaukee Trust Co.*, 216 U. S. 545, 557; *Stern-Falk & Co.* v. *Louisville Trust Co.*, 112 Fed. Rep. 501; *In re Orear*, 178 Fed. Rep. 632. And see also *In re Charles N. Davidson*, 179 Fed. Rep. 750.

There is no decision of this court upon this precise question, so far as its attitude is disclosed by decisions handed down, but see *Hiscock* v. *Mertens*, 205 U. S. 202; *Holden* v. *Stratton*, 198 U. S. 214 as to its views on certain phases of life insurance as property.

The question of a redemption of the policies by the bankrupt is not in this case, however, as it was in those cases.

If defendant's position is correct the policies in the

absence of the assignment to Crouse would have remained the property of the McIntyre firm notwithstanding the bankruptcy, and that firm, not the trustee, would have been entitled to the proceeds of the policies. The defendant Crouse's position is in no respect stronger than would have been that of the bankrupt had there been no transfer.

*Mr. Winfred T. Denison* also for the appellants:

Commercially, these insurance policies were transferable property to the full extent of their corpus and not merely to the extent of their "cash surrender value," which was merely what one particular individual (the Insurance Co.) was bound on demand to pay for them.

The entire corpus of the policies and not merely the cash surrender value was "property which . . . the bankrupt could by any means have transferred" within the meaning of § 70. *Re Coleman,* 136 Fed. Rep. 818 (C. C. A. 2d Ct.); *Re Brodbine,* 93 Fed. Rep. 643; *Hyde* v. *Woods,* 94 U. S. 523–525; *Williams* v. *Heard,* 140 U. S. 529.

Therefore they passed to the trustees unless exempted by some provision of law.

Even if the laws of New York controlled this class of exemption, no portion whatever of these policies would be exempt. Laws, N. Y. 1896, p. 220, c. 272, § 22; *Re Coleman,* 136 Fed. Rep. 818, *supra;* *Re Heffling,* 175 Fed. Rep. 65 (C. C. A. 2d Ct.); *Re White,* 174 Fed. Rep. 333 (C. C. A. 2d Ct.); *Re Wolff,* 165 Fed. Rep. 984 (D. C. N. Y.); *Re Boardman,* 103 Fed. Rep. 783 (D. C. N. Y.); *Re Dieck,* 100 Fed. Rep. 770.

But the exemption contained in the proviso to § 70 is a general rule laid down by Congress itself and applies to policies which would not be exempt by the state law. *Holden* v. *Stratton,* 198 U. S. 202.

The language of the proviso does not carry the exemption beyond a privilege to bankrupts who have insurance

on their own lives. This is "the feeling of the language," (*United States* v. *Johnson*, 221 U. S. 488, p. 496) and there is no affirmative hint of any purpose to give the privilege to a bankrupt who is not the assured, but a mere stranger holding the policy exclusively as a commercial asset.

In using the terms "payable to himself, his estate or personal representatives,". the proviso excludes policies payable to his assignees *inter vivos* and held by them entirely as commercial property.

The purpose of the proviso does not require any extension of the normal meaning of the language. *Holden* v. *Stratton,* supra; *Re Judson, supra; Burlingham* v. *Crouse,* 181 Fed. Rep. 479 (C. C. A.).

To construe the proviso as granting an exemption to policies held commercially and not by the beneficiaries, would be to make a useless encroachment on the general clause in § 70 and the general purposes of the Bankruptcy Act. *Re Slingluff,* 106 Fed. Rep. 154, at pp. 156–158.

It is significant that in every one of the cases under this proviso the bankrupt has been the assured: e. g., *Holden* v. *Stratton,* 198 U. S. 202; *Re Coleman,* 136 Fed. Rep. 818; *Hiscock* v. *Mertens,* 204 U. S. 202; *Re Buelow,* 98 Fed. Rep. 86; *Re Lange,* 91 Fed. Rep. 361; *Gould* v. *N. Y. Life,* 132 Fed. Rep. 927; *Re Judson,* 192 Fed. Rep. 834; and cf. under act of 1867, *Re McKinney,* 15 Fed. Rep. 535.

The Bankruptcy Law having established an exemption of its own which would not have existed at all under the New York law, it is immaterial whether, and under what conditions, a New York exemption, if it had existed, would have been available to an individual bankrupt out of partnership property. But the New York rule is not clear, the only case being *Stewart* v. *Brown,* 37 N. Y. 350, decided in 1867, and not in point with this case. Even *Re Camp,* 91 Fed. Rep. 745, covering the Georgia District, has since been doubted and strictly limited by the court which decided it. *Re W. S. Jennings & Co.,* 166 Fed. Rep.

639 (Georgia). See also *Jennings* v. *Stannus & Son*, 191 Fed. Rep. 347, p. 349; *Re Beauchamp*, 101 Fed. Rep. 106 (Md.); Collier on Bankruptcy (9th ed.), p. 196; Burdick on Partnership (2d ed.), p. 299 (5); *Pond* v. *Kimball*, 101 Massachusetts, 105.

*Mr. Levi S. Chapman* and *Mr. Henry E. Newell* for appellee:

The policies in suit were not, under the circumstances here shown, assets which in any event would pass to the trustees. Sec. 70a, subd. 5.

The policies in suit, at the time of petition filed having no actual cash surrender value and no value of any kind which could be realized by the bankrupt or the trustees, were merely executory contracts, and were not property or a property right which the trustees in bankruptcy were entitled to take. *Warnock* v. *Davis*, 104 U. S. 775; *In re McKinney*, 15 Fed. Rep. 535; *Bank of Washington* v. *Hume*, 128 U. S. 195; *In re Coleman*, 136 Fed. Rep. 818; *Hiscock* v. *Mertens*, 205 U. S. 202; *In re Newland*, No. 10170 Fed. Cas.; *Leonard* v. *Clinton*, 26 Hun (N. Y.), 288; *Barber's Adms.* v. *Laroue*, 106 Kentucky, 546; *Holt* v. *Everall*, 34 L. T. (N. S.) 599; *In re Beulow*, 98 Fed. Rep. 86; *Matter of Josephson*, 121 Fed. Rep. 142; aff'd 124 Fed. Rep. 734; *Morris* v. *Dodd*, 116 Georgia, 606; *In re Steele*, 98 Fed. Rep. 78; *Re Lange*, 91 Fed. Rep. 361; *Aetna Nat. Bank* v. *U. S. Life Ins. Co.*, 24 Fed. Rep. 770; *Gould* v. *N. Y. Life Ins. Co.*, 132 Fed. Rep. 927; *Re Judson*, 193 Fed. Rep. 834; *Re Slingluff*, 106 Fed. Rep. 154; Collier on Bankruptcy, 7th ed., 1909, p. 822.

The value of a life insurance policy as an asset in the case of liquidation of the company, is its cash or reserve value. *People* v. *Security Life Ins. Co.*, 78 N. Y. 114; *Matter of Hettling*, 23 A. B. R. 161; *In re Orear*, 178 Fed. Rep. 632; *Partridge* v. *Andrews*, 191 Fed. Rep. 325, can all be distinguished or are in error.

The policies in question are within the proviso of § 70a, subd. 5 of the Bankruptcy Law. *In re Bertonshaw*, 157 Fed. Rep. 363.

A transfer by an insolvent of exempt property is valid as to creditors even though the transfer be voluntary. A debtor may keep or sell his exempt property as he sees fit. *Baldwin* v. *Rogers*, 28 Minnesota, 544; *Bulkley* v. *Wheeler*, 52 Michigan, 296; *Kramer* v. *Wood*, 52 S. W. Rep. 1113; *Smyth* v. *Hall*, 126 Iowa, 627, 102 N. W. Rep. 520.

The bankrupt's right under § 70 to retain any insurance policy held by him by paying or securing to the trustee the cash surrender value thereof after the same has been stated by the company to the trustee, is an assignable right. *Van Kirk* v. *Vermont Slate Co.*, 140 Fed. Rep. 38.

Mr. Justice Day delivered the opinion of the court.

The action was brought in the United States District Court for the Southern District of New York by the trustees of the firm of T. A. McIntyre & Company, and of the individual members of that firm, bankrupts, against Charles M. Crouse and The Equitable Life Assurance Society of the United States to recover the sum of $90,698.32, the net proceeds of certain policies of insurance issued by the Equitable Life Assurance Society upon the life of Thomas A. McIntyre, one of the bankrupts, deceased. The proceeds of the policies were paid into court by the Society. The judgment of the District Court in favor of Crouse was affirmed by the Circuit Court of Appeals (181 Fed. Rep. 479), and the case has been appealed to this court.

It appears that on the tenth of April, 1902, Thomas A. McIntyre obtained two policies of life insurance in the Equitable Society. They were known as "guaranteed cash-value, limited payment, life policies," each providing that upon the death of the insured the company would pay to his executors, administrators or assigns the sum of

$100,000 in fifty annual instalments or the sum of $53,000 in cash, a total of $106,000 for the two policies. On April 14, 1906, the policies were assigned absolutely to the firm of T. A. McIntyre & Company, and on April 24, 1907, they were by that firm assigned to the Equitable Society as collateral security for a loan of $15,370. On February 25, 1908, two months prior to the filing of the petition in bankruptcy, the policies were assigned by McIntyre & Company to the defendant, Charles M. Crouse, subject, however, to the prior assignment to the Equitable Society. A petition in involuntary bankruptcy was filed against McIntyre & Company and its individual members on April 25, 1908, and on May 9, 1908, the defendant Crouse paid the premiums on the policies, in the sum of $6,078.38. McIntyre & Company and the individual members thereof were adjudged involuntary bankrupts on May 21, 1908, and the trustees were elected on the twenty-fourth of July, 1908. On the twenty-ninth of July, 1908, Thomas A. McIntyre died, and the policies became payable.

It appears that the policies had a cash surrender value, which at the time when the trustees qualified was $15,370, or the amount of the loan of the Equitable Society upon the policies. It is therefore apparent that on the day when the petition was filed, as well as the day of the adjudication in bankruptcy, the cash surrender value would not have exceeded the loan and lien of the Society upon the policies. The Circuit Court of Appeals for the Second Circuit held that under the circumstances the policies did not pass to the trustees as assets, and therefore the action which had been begun to set aside the transfer to Crouse, as a preference within the Bankruptcy Act, could not be maintained.

The correctness of this decision depends primarily upon the construction of § 70a of the Bankruptcy Act which reads:

"The trustee. of the estate of a bankrupt, upon his appointment . and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1) documents relating to his property; (2) interests in patents, patent rights, copyrights, and trade-marks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, That when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his· estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets; and (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property."

The part of the section particularly to be considered is subdivision 5 and its proviso. Subdivision 5 undertakes to vest in the trustee property which, prior to the filing of the petition, the bankrupt could by any means have transferred or which might have been levied upon or sold under judicial process against him. Then follows the proviso with reference to insurance policies which have a cash surrender value, permitting a bankrupt, when the cash

surrender value has been ascertained and stated, to pay or secure such sum to the trustee and to continue to hold, own and carry the policies free from the claims of creditors, otherwise the policies to pass to the trustee as assets.

Two constructions have been given this section, and the question, as presented in this case, has not been the subject of direct determination in this court. The one favors the view that only policies having a cash surrender value are intended to pass to the trustee for the benefit of creditors.[1] The other, conceding that the proviso deals with this class of policies, maintains that policies of life insurance which have no surrender value pass to the trustee under the language of § 70a immediately preceding the proviso, which reads: "Property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." [2]

To determine the congressional intent in this respect requires a brief consideration of the nature of the rights dealt with. Life insurance may be given in a contract providing simply for payment of premiums on a calculated basis which accumulates no surplus for the holder. Such insurance has no surrender value. Policies, whether payable at the end of a term of years or at death, may be issued upon a basis of calculation which accumulates a net reserve in favor of the policy-holder and which forms a consequent basis for the surrender of the policy by the insured with advantage to the company upon the payment of a part of this accumulated reserve. This feature of surrender value was discussed by Judge Brown of the

---

[1] *In re Buelow*, 98 Fed. Rep. 86; *In re Josephson*, 121 Fed. Rep. 142; *Gould* v. *New York Life Ins. Co.*, 132 Fed. Rep. 927; *Morris* v. *Dodd*, 110 Georgia, 606.

[2] *In re Becker*, 106 Fed. Rep. 54; *In re Slingluff*, 106 Fed. Rep. 154; *In re Welling*, 113 Fed. Rep. 189; *In re Coleman*, 136 Fed. Rep. 818; *In re Hettling*, 175 Fed. Rep. 65; *In re Orear*, 178 Fed. Rep. 632.

Southern District of New York, in *In re McKinney*, 15
Fed. Rep. 535, 537:

"The first of these elements, the surrender value of the
policy, arises from the fact that the fixed annual premium
is much in excess of the annual risk during the earlier
years of the policy, an excess made necessary in order to
balance the deficiency of the same premium to meet the
annual risk during the latter years of the policy. This
excess in the premium paid over the annual cost of insur-
ance, with accumulations of interest, constitutes the sur-
render value. Though this excess of premiums paid is
legally the sole property of the company, still in practical
effect, though not in law, it is moneys of the assured
deposited with the company in advance to make up
the deficiency in later premiums to cover the annual cost
of insurance, instead of being retained by the assured and
paid by him to the company in the shape of greatly-
increased premiums, when the risk is greatest. It is the
'net reserve' required by law to be kept by the company
for the benefit of the assured, and to be maintained to the
credit of the policy. So long as the policy remains in force
the company has not practically any beneficial interest in
it, except as its custodian, with the obligation to main-
tain it unimpaired and suitably invested for the benefit
of the insured. This is the practical, though not the legal,
relation of the company to this fund.

"Upon the surrender of the policy before the death of
the assured, the company, to be relieved from all responsi-
bility for the increased risk, which is represented by this
accumulating reserve, could well afford to surrender a
considerable part of it to the assured, or his representative.
A return of a part in some form or other is now usually
made. . . ."

This case has been cited with approval in this court.
*Holden* v. *Stratton*, 198 U. S. 202; *Hiscock* v. *Mertens*, 205
U. S. 202.

Under the Bankruptcy Act of 1867 no special provision was made for insurance policies. The section providing for the passing of the assets of the bankrupt to the trustee contained the broad language of "all the estate, real and personal." Under this statute it was held in *In re McKinney, supra,* that the insurance upon the life of the bankrupt vested in the bankrupt estate only to the extent of its cash surrender value at the time of the filing of the petition.

In *Holden* v. *Stratton, supra,* this court held that the law of the State of Washington, exempting the proceeds of life insurance policies, was applicable, and under the Bankruptcy Act of 1898, § 6, the bankrupt might retain such policies. The Circuit Court of Appeals for the Ninth Circuit, from which *Holden* v. *Stratton* came by certiorari to this court, had held that § 70a was not controlled by the exemptions provided in § 6 of the Bankruptcy Act, and had adhered to its former decision in *In re Scheld,* 104 Fed. Rep. 870, in which § 70a had been construed to pass insurance policies having a cash surrender value to the trustee, unless the bankrupt paid or secured the surrender value, as pointed out in the section. While this court held that the exemption under the state law applied under the Bankruptcy Act to the policy in question, coming to deal with the construction of § 70a, this court said (p. 213):

"As section 70a deals only with property which, not being exempt, passes to the trustee, the mission of the proviso was, in the interest of the perpetuation of policies of life insurance, to provide a rule by which, where such policies passed to the trustee because they were not exempt, if they had a surrender value their future operation could be preserved by vesting the bankrupt with the privilege of paying such surrender value, whereby the policy would be withdrawn out of the category of an asset of the estate. That is to say, the purpose of the proviso was to confer a benefit upon the insured bankrupt by limiting

the character of the interest in a non-exempt life insurance policy which should pass to the trustee, and not to cause such a policy when exempt to become an asset of the estate. When the purpose of the proviso is thus ascertained it becomes apparent that to maintain the construction which the argument seeks to affix to the proviso, would cause it to produce a result diametrically opposed to its spirit and to the purpose it was intended to subserve."

The section came again before this court in *Hiscock* v. *Mertens, supra,* and it was held that the insured was entitled to retain the policies upon the payment to the trustee of a sum equivalent to the amount the company was willing to pay according to its custom, although there was no stipulation in the policies as to a cash surrender value, and upon this subject the court said (p. 212):

"What possible difference could it make whether the surrender value was stipulated in a policy or universally recognized by the companies. In either case the purpose of the statute would be subserved, which was to secure to the trustee the sum of such value and to enable the bankrupt to 'continue to hold, own and carry such policy free from the claims of the creditors participating in the distribution of the estate under the bankruptcy proceedings.'"

And in that case it appeared that this sum was less than $6,000, whereas in a short time, some six months later, the maturity of one of the policies would give it a value of over $11,000. But this court held that this circumstance made no difference in the right of the insured to pay the surrender value and hold the policy.

True it is that life insurance policies are a species of property and might be held to pass under the general terms of subd. 5, § 70a, but a proviso dealing with a class of this property was inserted and must be given its due weight in construing the statute. It is also true that a proviso may sometimes mean simply additional legisla-

tion, and not be intended to have the usual and primary office of a proviso which is to limit generalities and exclude from the scope of the statute that which would otherwise be within its terms.

This proviso deals with explicitness with the subject of life insurance held by the bankrupt which has a surrender value. Originally life insurance policies were contracts in consideration of annual sums paid as premiums for the payment of a fixed sum on the death of the insured. It is true that such contracts have been much varied in form since, and policies payable in a period of years so as to become investments and means of money saving are in common use. But most of these policies will be found to have either a stipulated surrender value or an established value, the amount of which the companies are willing to pay and which brings the policy within the terms of the proviso (*Hiscock* v. *Mertens, supra*) and makes its present value available to the bankrupt estate. While life insurance is property, it is peculiar property. Legislatures of some of the States have provided that policies of insurance shall be exempt from liability for debt, and in many States provision is made for the protection from such liability of policies in favor of those dependent upon the insured. See *Holden* v. *Stratton, supra.*

Congress undoubtedly had the nature of insurance contracts in mind in passing § 70a with its proviso. Ordinarily the keeping up of insurance of either class would require the payment of premiums perhaps for a number of years. For this purpose the estate might or might not have funds, or the payments might be so deferred as to unduly embarrass the settlement of the estate. Congress recognized also that many policies at the time of bankruptcy might have a very considerable present value which a bankrupt could realize by surrendering his policy to the company. We think it was this latter sum that the act intended to secure to creditors by requiring its pay-

ment to the trustee as a condition of keeping the policy alive. In passing this statute Congress intended, while exacting this much, that when that sum was realized to the estate the bankrupt should be permitted to retain the insurance which, because of advancing years or declining health, it might be impossible for him to replace. It is the twofold purpose of the Bankruptcy Act to convert the estate of the bankrupt into cash and distribute it among creditors and then to give the bankrupt a fresh start with such exemptions and rights as the statute left untouched. In the light of this policy the act must be construed. We think it was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset, otherwise to leave to the insured the benefit of his life insurance.

It should be observed, in this connection, that in the present case the company had advanced upon the policies their full surrender value, as stipulated in the policies, and that the only interest that could have passed to the trustees would have been the speculative right to the net proceeds of the policies, contingent upon the death of the bankrupt and possibly dependent upon the payment of large annual premiums for thirteen years.

It is urged, however, that under § 70a, the cash surrender value was to be paid by the *bankrupt* when ascertained and the policies kept alive for *his* benefit; and as these policies had been assigned by the beneficiary to McIntyre & Company, not as collateral, but absolutely, they would not come within the terms of the proviso, and therefore the proceeds of the policies vested in the bankrupt estate; but we find nothing in the act by which the right of the assignee of a policy to the benefits which would have accrued to the bankrupt is limited. As we have construed the statute, its purpose was to vest the surrender value in the trustee for the benefit of the creditors and not otherwise to limit the bankrupt in dealing with his policy.

As to the reimbursement of Crouse for the premiums advanced by him and the application by him of the proceeds of the policies to particular items of indebtedness of the bankrupt estate in his favor—upon the facts found we have no occasion to disturb the decree of the Circuit Court of Appeals.

It results that the judgment of the Circuit Court of Appeals must be

*Affirmed.*