### In re WILLIAMS et al.

#### (District Court, E. D. Pennsylvania. June 13, 1918.)

#### No. 6207.

BANKRUPTCY &143(12)—INSURANCE POLICIES—RIGHT OF TRUSTEE.

Under Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544, vesting the trustee with the title of the bankrupt to documents relating to his property, powers which he might exercise for his own benefit, property transferred in fraud of creditors, and property the title to which he could have passed, or which was subject to execution process at the instance of his creditors, with the proviso that the bankrupt might reclaim any insurance policy having a cash surrender value payable to himself or estate, and hold the same clear of any claims of creditors, by payment of the cash surrender value to the trustee, insurance policies on the life of the bankrupt, which were fully paid and which yielded annual dividends, did not pass to the trustee, where they had all been borrowed upon to their full loan value, and the interest on the loans exceeded the dividends, for the trustee, if he offered the policies for cancellation, would receive nothing, and in view of the nature of the contract of insurance, and the purposes of the proviso, he should not be allowed to thus forfeit any advantage which the bankrupt or his beneficiaries might derive from continuing the policies.

In Bankruptcy. In the matter of the bankruptcy of Harvey Williams and William F. Parry, individually and trading as the Electric Service or Logan Electric Service Company. Sur certificate of referee for review of an order denying claim of the trustee to certain policies of insurance on the life of the bankrupt. Order confirmed, and petition for review denied.

A. W. Horton and Alfred T. Steinmetz, both of Philadelphia, Pa., for trustee petitioner.

Edgar N. Black, of Philadelphia, Pa., for bankrupt.

---

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DICKINSON, District Judge. The question involved in this case is whether, under the provisions of the bankruptcy law, the title to and right of possession of certain policies of insurance passed to the trustee, or whether it is a species of property which did not so pass. The referee found against the trustee.

Under the provisions of the bankrupt law the trustee is vested by operation of law with, inter alia, the title of the bankrupt, among other unexempted property, to (1) documents relating to his property; (3) powers which he might exercise for his own benefit; (4) property transferred in fraud of creditors; and (5) property the title to which he could have passed, or which was subject to execution process at the instance of his creditors. In the same clause, which vests the title classified as (5), there is a proviso to the effect that the bankrupt may reclaim any insurance policy, which has a cash surrender value, payable to himself or his estate, and hold the same clear of any claims of creditors by the payment of such cash surrender value to the trustee; "otherwise, the policy shall pass to the trustee as assets."

Three policies of insurance had been taken out on the life of the bankrupt. One was a policy of $5,000, payable to the wife of the insured, or, in the event of her prior death, to her estate, or to any other beneficiary designated by the insured, with power in the insured to change the beneficiary, provided the policy had not then been assigned. Another was a policy for $2,000, of like tenor and effect. The other was a policy for $3,000, payable to the wife absolutely, without any power in the insured to change the beneficiary. Each one of these policies is full paid, in the sense that no other premiums for its continuance are required to be paid. They each yield an income such as is known to insurance contracts as an annual dividend. They have all been borrowed upon to their full loan value, and the interest on the loans exceeds the dividend. The estimated aggregate dividends are annually $56, while the interest is $234. The insured has the right to apply the dividends to the payment of interest, but the dividends cannot be drawn without the payment of the interest. We have not discovered any specific finding to that effect, but assume the beneficiary was a party to the loan contract. None of the policies have a cash surrender value in excess of the loan, and have been appraised as of no value. The policies were originally taken out for the benefit of the beneficiary, and are dated, respectively, August 17, 1908, February 19, 1909, and January 29, 1908, following the order above stated.

A question has been introduced into the discussion and considered by the referee of the constitutionality of the provisions of the acts of the Pennsylvania Legislature providing that policies taken out for the benefit of the wife shall be immune from the attacks of creditors. We see no occasion to follow this discussion, because, as a practical question, it is eliminated, if the policies were taken out and paid for before the debts due creditors were contracted. Here, again, we have not been able to discover any specific findings which would enable us to determine the question suggested, but we assume the fact to be that the policies were issued and paid for before any rights of cred-

itors arose, and that the proper finding is that the title of the wife is not open to successful attack such as that indicated.

This brings us to the consideration of what we understand to be the real question involved. Policy No. 712,820, for the sum of $3,000, which is made absolutely payable to the wife, we find to be her property, and not to have passed to the trustee. Respecting the policies in which there was a right in the insured to change the beneficiary, it is, as we understand. it, conceded that the title did pass to the trustee, subject to such right of reclamation as is given to the bankrupt by the quoted proviso.

The difficulty in satisfactorily answering the question involved in this case is the difficulty which often arises when the fact situation which is presented is one not in the contemplation of the framer of the law by which the situation is controlled. The draftsman of this proviso has supplied us with a very satisfactory guide under the fact conditions for which he had in his mind to provide. It is just as clear that he did not have in mind to provide for the precise fact situation with which we are now confronted. We are therefore driven to the expedient of interpreting this law by attempting to get such a concept of the present fact situation as will bring it within the provisions of the statute.

In order to have a starting point, we begin with the proposition that a policy of insurance is a contract, and that as such it is, as are other contracts, property, and as property it passes to the trustee. We think there is in the act recognition of what we may term this primal fact. It was known, however, that in bankruptcy proceedings the court would often be confronted with a fact situation under which the policies of insurance were outstanding upon the life of the bankrupt, who because of advanced years or condition of health was no longer an acceptable insurable risk. It was recognized, also, that because of the peculiar character of the insurance contract it was not property which could be sold, because of the principle of law that no one could recover under such a contract who had not an insurable interest in the life of the insured. Under such circumstances, there might be outstanding policies which were of real value to the insured, but this value would be one available to creditors only at the cost of the payment of premiums for an indefinite period. The situation would frequently make it impracticable for the bankrupt estate to continue such policies in force, and if the bankrupt, or some members of his family, were not permitted to keep them in force, they would lapse, thereby resulting in a wasteful loss, or, if they were put up for sale, the possible purchasers would be so limited that the bankrupt estate would realize nothing. If the policies had a cash surrender value, the trustee had no recourse other than to give up the policies on receipt of such value. The doing of this would result in a loss to the insured and his family, and often result in benefit to no one except the insurance company.

The difficulties of such a situation were happily met by the provision, to which we have referred, which enabled the bankrupt to reclaim the

policy upon payment of the surrender value. This gave to the bankrupt estate all of the value which the policy had to the creditors, and at the same time saved to the bankrupt and his family any redundant value it might have. In choosing a phrase to incorporate this thought into the bankruptcy laws, the framer of the statute gave to the bankrupt the right referred to whenever the policy had "a cash surrender value," etc. In all other cases the policy was to pass to the trustee, unaffected by this provision.

Because of this phraseology, the argument was addressed to the referee, and is now addressed to us, that the policies under consideration are not within this proviso, because they have no surrender value. With such a concept of the situation in the mind, it is difficult, if not impossible, to withstand the force of the argument. Is this view the correct view of the fact situation? The statement that the policies have no surrender value is true, because of the other fact that before the petition in bankruptcy was filed they had been borrowed upon to the full amount of the surrender value. Are we, however, justified in denying the existence of a surrender value because this loan has been made? Is not the true concept of the situation that the policies still remain as valid contracts, and that they still have a cash surrender value, accompanied only by the further fact that whatever value the policy has, including its surrender value, has been pledged for the loan?

Testing the soundness of this view of the fact situation, could not the holders of these policies to-day exercise the power or right which resides in them to surrender up these policies to be canceled, and to receive the cash surrender value which belongs to them, applying that cash surrender value in redemption of its pledge for the money loaned? We are of opinion that this is not only a permissible, but the correct, view of the fact situation, and it only remains to inquire upon payment of what sum the insured has the right to reclaim the policies. It seems to us that the sum which he is called upon to pay is precisely that sum which the trustee in bankruptcy would receive, had the insured declined, within the stipulated time, to reclaim the policies, and had the trustee himself surrendered them for cancellation and demanded of the companies the moneys to which he would have been entitled. He would have received nothing beyond the amount of the loans, and, although this sum is nothing, it measures the money right of the trustee as accurately as if it was measured by $100, $1,000, or any other sum. This view is, as we understand it, in substantial accord with the view taken of such transactions in Burlingham v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, in following which the referee was led to the conclusion at which he arrived.

The order of the referee is confirmed, and the petition for a review denied.