## No. 9368.

### TRAVELERS INSURANCE COMPANY *v.* MIDDLEKAMP.

1. LIFE INSURANCE—*Bankruptcy of Insured—Right of Trustee.* All powers which the insured might have exercised for his own benefit are vested in the trustee.

2. *Cash Surrender Value.* A provision of the policy that it shall have a cash surrender value after a certain period is not defeated by the bankruptcy of the insured, prior to a default in a premium, even tho the policy provides that the surrender value shall not accrue, until such default.

The only effect of the provision in question is that the cash surrender value is not payable until after the default.

This conclusion based upon the Bankruptcy Act and the construction placed upon it by the courts, and is not to be accepted as controlling when the statute is not involved.

*Error to Pueblo District Court, Hon. Charles S. Essex, Judge.*

Messrs. GOUDY, TWITCHELL & BURKHARDT, for plaintiff in error.

Messrs. ADAMS & GAST and Mr. SAM PARLAPIANO, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THIS action is by the trustee in bankruptcy, defendant in error, to recover the surrender value of a life insurance policy written upon the life of the bankrupt by the plaintiff in error.

The case was determined upon the general demurrer of the trustee to the answer of the defendant company, which was sustained and judgment rendered accordingly.

The facts admitted by the pleadings are in substance that the Travelers' Insurance Company on the 30th day of June, 1906, issued to the bankrupt Coney C. Slaughter, a life insurance policy in the sum of $5,000 with Dorothy C. Slaughter as beneficiary, and with annual premiums of $167.60 payable on June 30th, of each year, with thirty days grace, upon the payment of five per cent. interest.

An involuntary petition in bankruptcy was filed against Slaughter April 30th, 1915, and he was adjudged a bankrupt June 8th, 1915, and the plaintiff elected trustee in bankruptcy, June 25th, 1915,

The demand was for the cash surrender value of the policy which the court found to be $835.00 with interest, in the total sum of $1,003.67, for which judgment was rendered.

The suit is founded upon a provision of the bankruptcy law commonly referred to as a part of section 70 A-5, and is as follows:

"(3)   Powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him; Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets; and (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to his property."

The cash "surrender value" referred to in the section quoted, and the principle upon which it is based is defined and stated in the case of *In re McKinney*, 15 Fed. 535, and since then generally approved: *Hiscock v. Mertens*, 205 U. S. 202, 51 L. Ed. 771, 27 Sup. Ct. 488; *Burlingham v. Crouse*, 228 U. S. 459, 57 L. Ed. 920, 33 Sup. Ct. 564, 46 L. R. A. (N. S.) 148; is as follows:

"The first of these elements, the surrender value of the policy, arises from the fact that the fixed annual premium is much in excess of the annual risk during the earlier years of the policy, an excess made necessary in order to balance the deficiency of the same premium to meet the annual risk

during the latter years of the policy. This excess in the premium paid, over the annual cost of insurance, with accumulations of interest, constitute the surrender value. Though this excess of premiums paid is legally the sole property of the company, still in practical effect, though not in law, it is moneys of the assured deposited with the company in advance to make up the deficiency in later premiums to cover the annual cost of insurance, instead of being retained by the assured and paid by him to the company in the shape of greatly-increased premiums, when the risk is greatest. It is the 'net reserve' required by law to be kept by the company for the benefit of the assured and to be maintained to the credit of the policy. So long as the policy remains in force the company has not practically any beneficial interest in it, except as its custodian, with the obligation to maintain it unimpaired and suitably invested for the benefit of the insured. This is the practical, though not the legal, relation of the company to this fund.

Upon the surrender of the policy before the death of the assured, the company, to be relieved from all responsibility for the increased risk, which is represented by this accumulating reserve, could well afford to surrender a considerable part of it to the assured, or his representative."

The premiums upon the policy under consideration had been fully paid to June 30th, 1915, and therefore there was no default in such payments at the time of filing the petition, or at the time of judgment in bankruptcy.

There are three provisions in the contract of insurance which are involved to a greater or less degree in consideration of the case; the provision relating to cash value; that relating to the time when the insurance begins to run; and to all payments under the terms of the policy. These are:

1.    "If any premium is not paid on or before the date when due, and if there is no indebtedness to the company, the insurance will automatically continue from said due date as term insurance, for the amount and during the term, including the period of grace, specified in Column 3 of the accompanying table; or in lieu of such term insurance, the

company will endorse on this contract the amount of paid-up insurance, if any, specified in column 2 of the accompanying table, upon written request therefor made by the insured within six months from said due date. Upon similar written request within said six months, and surrender of the contract, the company will pay the cash value, if any, specified in column 1 of the accompanying table."

2. "Change of Beneficiary—Provided this contract is not assigned, the insured may at any time and from time to time during its continuance change the beneficiary, to take effect only when such change and the written consent of the company thereto are endorsed upon the contract at the Home Office of the company, whereupon all rights of the former beneficiary shall cease. If there shall be no beneficiary living at the death of the insured, the proceeds of this contract shall be paid to the executors, administrators or assigns of the insured."

3. "Insurance begins on June 30, 1906, and the insurance year, the provisions for dividends, cash loans, cash values, paidup and automatic term insurance all relate back to that date."

It will be noted that the policy does provide for a cash value, specified therein, and that the company agrees to pay such cash value, ascertainable from the policy itself, upon six months notice after default in payment of premiums due. Further, that the insured could at any time change the beneficiary.

The fact appears also that the policy had run a sufficient length of time to entitle the insured to receive a cash surrender value under its terms.

These were all powers which the insured might have exercised for his own benefit, and therefore by operation of law were vested in the trustee.

A summary of the decisions of the courts upon these points is stated in *Cohen v. Samuels*, 245 U. S. 50, 62 L. Ed. 143, 38 Sup. Ct. 36, and require no further citations upon this subject. In that case the court said:

"The declaration of subdivision 3 is that 'powers which

he might have exercised for his own benefit' shall in turn be vested in the trustee, and there is vested in him as well all property that the bankrupt could transfer or which by judicial process could be subjected to his debts, and especially as to insurance policies which have a cash surrender value payable to himself, his estate or personal representative. It is true the policies in question here are not so payable, but they can be or could have been so payable at his own will and by simple declaration. Under such conditions to hold that there was nothing of property to vest in a trustee would be to make an insurance policy a shelter for valuable assets and, it might be, a refuge for fraud. And our conclusions would be the same if we regarded the proviso alone.

This court has been careful to define the interest of bankrupts in the insurance policies they may possess. In *Hiscock v. Mertens*, 205 U. S. 202, 51 L. Ed. 771, 27 Sup. Ct. 488, we gave a bankrupt the benefit of the redemption of a policy from the claims of creditors, though a cash surrender value was not provided by it but was recognized by the insurance company. In *Burlingham v. Crouse*, 228 U. S. 459, 473, 33 Sup. Ct. 564, 568, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, we said that it 'was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset; otherwise to leave to the insured the benefit of his life insurance.' See also *Everett v. Judson*, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154."

It is contended in this case that there could have been no cash surrender value of the policy on the date of the filing of the petition in bankruptcy, April 30th, 1915, for the reason that the policy provides that such surrender value may not accrue until default in payment of the premium, which did not in this case occur until June 30th, 1915. But the policy does provide that the policy shall have a cash surrender value after a certain period from its date, which period had elapsed on the date of the filing of the petition in bankruptcy.

No case is cited bearing directly upon this point which sustains the contention. But the precise question has been determined many times to the contrary, and to the effect that such a policy does have a cash value at the date of the filing of the petition, but that it does not mature, or in other words, is not payable until after default in the payment of the premiums.

It was said in *Hiscock v. Mertens, supra,* that:

"It is further contended that respondent has not made out that the policies have a cash surrender value, because it appears from the evidence that the company would not accept their surrender until they had lapsed, and that they had not lapsed either when the petition was filed or the bankruptcy adjudged. But this is tantamount to saying that no policy can ever have a surrender value."

In *Equitable Life Ins. Co. v. Miller,* 185 Fed. 98, 107 C. C. A. 316, the court in passing upon a like state of facts in this regard, as here, said:

"The contract of insurance expressly provided that, upon the lapse of the policy, after at least three years premium had been paid, the company would give to the insured (not to the beneficiaries) the choice of either a cash value or non-participating paid-up life policy. There can be no doubt that this policy passed to the trustee in bankruptcy as of May 9, 1908, notwithstanding the policy was then current and the cash surrender value did not mature until the subsequent default in the payment of the annual premium."

In the case of *Cohen v. Samuels, supra,* the petition was filed May 13th, 1915, and the premiums had been paid so as to keep the policy in full force until December 28th, 1915, and as before stated the cash surrender value passed to the trustee.

It is argued that the insurance company in this case has not consented to the payment. This can make no difference. The rights of the trustee exist by operation of law, which binds equally the insurer and the insured.

The views herein expressed are supported by *Cohen v.*

*Malone,* 248 U. S. 450, 63 L. Ed. 352, 39 Sup. Ct. 141; *Everett v. Judson,* 228 U. S. 474, 57 L. Ed. 927, 33 Sup. Ct. 508, 46 L. R. A. (N. S.) 154; In re Jones, 249 Fed. 487, and with those cited seem to be conclusive. It must be understood that the conclusion here reached is based upon the bankruptcy statute, and the construction of that statute by the courts, and that what is here said, is not to be accepted as controlling where the statute is not involved.

The judgment is affirmed.

*En banc.*

Teller, J. not participating.