## In re BEACHLEY.

### No. 8696.

### District Court, D. Maryland.

### April 29, 1937.

Leo H. Miller, of Hagerstown, Md., for bankrupt.

Samuel C. Strite, of Hagerstown, Md., for trustee.

**WILLIAM C. COLEMAN,** District Judge.

This case presents a conflict between a bankrupt and his trustee in bankruptcy respecting a life insurance policy under which the bankrupt was not the insured or beneficiary, but which he acquired by virtue of an assignment.

The material facts are that Donovan R. Beachley filed a voluntary petition in bankruptcy and was adjudged a bankrupt on December 11, 1936, and in due course a trustee was appointed to administer his estate. On the date of the filing of his voluntary petition, the bankrupt was the owner of a certain life insurance policy issued by the Home Life Insurance Company of New York, in the amount of $5,000, upon the life of one Morris L. Smith, who was no relation to the bankrupt, the latter having acquired the policy by valid assignment from Smith in 1928. The cash surrender value of this policy at the date of the filing of the voluntary petition was $341.45.

The trustee claimed this policy as an asset of the bankrupt's estate, that title to it vested in him, the trustee, for the benefit of the bankrupt's creditors. Whereupon on February 3, 1937, the bankrupt filed a petition denying the trustee's right to the policy and while what the bankrupt actually claimed by the petition is poorly stated and therefore somewhat ambiguous, apparently

what he claimed was the right to the policy after paying his trustee in bankruptcy the cash surrender value of it, less his, the bankrupt's exemption by virtue of state law. While this petition was pending before the referee, that is, on February 13, 1937, the trustee petitioned the referee for permission to sell the policy as an asset of the bankrupt's estate; the referee granted such permission and the policy was sold to a third party for $800, the bankrupt tendering to the trustee at the time of the sale, the policy's cash surrender value, but this tender was declined. Two days subsequent to the sale, that is, on February 15, 1937, the bankrupt's petition was denied by the referee, the referee giving as his reason for such denial that he did not consider the policy as coming within the meaning of section 70, subsection a (5) of the Bankruptcy Act (11 U.S.C.A. § 110(a) (5), and that for this reason he had permitted the trustee to sell the policy for the benefit of the bankrupt's creditors. The referee's opinion is very meager, and, contrary to the practice approved by this court, does not give to the court the benefit of the course of reasoning whereby the conclusion of the referee has been reached.

The matter is now before this court on the bankrupt's petition to review the action of the referee.

There are two questions presented by the appeal: First, Is the cash surrender value of the policy or any part of it to be treated as exempt for the bankrupt's benefit by virtue of the exemption granted by article 83, section 8 of the Maryland Code, as limited by article 3, section 44 of the Maryland Constitution, when construed in the light of section 6 of the Bankruptcy Act (11 U.S. C.A. § 24)? and, second, Does the cash surrender value of this policy arise out of such a policy as is contemplated by section 70a (5) of the Bankruptcy Act (11 U.S.C.A. § 110(a) (5) so as to entitle the bankrupt to retain title to the policy upon payment of its cash surrender value to the trustee?

Directing our attention to the first question, the pertinent provisions of the Maryland Constitution, the Maryland Code and the Bankruptcy Act are the following: "Laws shall be passed by the General Assembly to protect from execution a reasonable amount of the property of the debtor, not exceeding in value the sum of five hundred dollars." Maryland Constitution, art. 3, § 44. "One hundred dollars in property, whether the same consists of money, land or goods, of every defendant, as well as all money payable in the nature of insurance, benefit or relief in the contingency or event of sickness, accident, hurt or death of any person, shall be exempt from execution or seizure in satisfaction of debt or claim upon any judgment in any civil proceedings, except on judgments for breach of promise to marry or for seduction." Maryland Code, art. 83, § 8. "The provisions of this title shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition." 11 U.S.C.A. § 24.

While this precise question appears never to have been decided, at least in any of the reported decisions, we believe that "money payable in the nature of insurance, benefit or relief in the contingency or event of sickness, accident, hurt or death of *any* person," (italics inserted) as that phrase is used in article 83, section 8 of the Maryland Code, above quoted, means, when construed with relation to the section of the Bankruptcy Act above quoted, money arising from insurance written upon the life of *a bankrupt,* as distinguished from insurance upon some one else's life to which the bankrupt has acquired a right, as in the present case, by assignment. We believe that this is the logical deduction from the reasoning employed in the case of Hickman v. Hanover (C.C.A.) 33 F.(2d) 873, a decision on an appeal from this court (Judge Soper). There the bankrupt had certain policies whereby his life was insured for the benefit of his wife. These policies reserved to him the right to change the beneficiary, but this right had not been exercised when the bankruptcy proceedings were begun. The policies had a cash surrender value of more than $500, and the bankrupt claimed that they were exempt under the Maryland law, above quoted, to the extent of $500 and that therefore, his trustee in bankruptcy was entitled to only so much of their cash surrender value as was in excess of that sum. On the other hand, the trustee claimed that the exemption was limited to $100 and that, therefore, he, on behalf of the bankrupt's creditors, was entitled to all the cash surrender value in excess of the latter sum.

This court (Judge Soper) sustained the bankrupt's contention and the Circuit Court of Appeals affirmed the decision. In the course of its opinion holding that cash surrender value is "money payable in the nature of insurance" within the meaning of the provisions of the Maryland Constitution and Code, above quoted, the court went on to say (33 F.(2d) 873, at page 874), "We think the plain purpose of the statute was to encourage men to insure *their lives* for the benefit of their families." (Italics inserted.) This seems to us clearly to indicate that the appellate court considered the provision of the Maryland exemption statute to be restricted, in its application to insurance policies, to those which are actually upon the lives of those claiming the exemption.

However, we find nothing in the decision of Hickman v. Hanover, supra, or any other decision to which we have been referred, which indicates that the money represented by the cash surrender value of any insurance policy owned by one although not the insured, claiming the exemption, should not to the extent of $100 be treated as "property." The language of the Maryland statute is clear. It provides for an exemption of "one hundred dollars in property, whether the same consists of money, land or goods, of every defendant," and thus uses the word "property" without any qualification whatsoever. Therefore, we believe that were this the only issue in the case, the bankrupt would be entitled to claim his exemption to the extent of $100 out of the cash surrender value of the policy in suit, the balance going to his trustee.

With respect to the second question, our decision is even more favorable to the bankrupt's trustee because we believe that section 70a (5) of the Bankruptcy Act, properly construed, embraces, as does the provision of the Maryland Code already discussed, only such policies as are upon the life of the bankrupt. This section reads as follows: "When any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings; otherwise the policy shall pass to the trustee as assets." 11 U.S.C.A. § 110(a) (5).

There appears to be only one reported decision directly on this point, namely, Curtis v. Humphrey, 78 F.(2d) 73, 103 A.L.R. 236, a decision of the Circuit Court of Appeals for the Fifth Circuit, rendered in 1935. Certiorari was denied by the Supreme Court. See 296 U.S. 605, 56 S.Ct. 121, 80 L.Ed. 429. In this case, the husband of a voluntary bankrupt had, prior to the filing of his wife's petition, made an absolute assignment to her of a policy on his life in which she was the beneficiary. At the time when the petition was filed, this policy had no cash surrender value because pledged to the insurance company to secure a loan in excess of such value. It was held that the wife and not her trustee in bankruptcy was entitled to the insurance when it subsequently matured upon her husband's death, the trustee's rights having become fixed, as the court found, relying upon Everett v. Judson, 228 U.S. 474, 33 S.Ct. 568, 57 L.Ed. 927, 46 L.R.A.(N.S.) 154, as of the date when the wife's bankruptcy petition was filed. See, also, Burlingham v. Crouse, 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920, 46 L.R.A.(N.S.) 148, and Andrews v. Partridge, 228 U.S. 479, 33 S.Ct. 570, 57 L.Ed. 929. No point appears to have been made of the fact that the assignment was from one spouse to another, as opposed to the situation in the present case where the assignment is from a third party to the bankrupt; nor of the fact that the bankrupt was the beneficiary under the policy. The court said, at page 74, of 78 F.(2d): "Although it is true that the policy involved in that case [Burlingham v. Crouse, supra] was on the life of the bankrupt, while here it is not, in our opinion the statute as there construed was intended for the benefit of the bankrupt owner of a life insurance policy whether the bankrupt became such owner by insuring his own life or by taking a valid assignment of a policy on the life of another."

We are not impressed by this reasoning of Judge Bryan, Circuit Judge, as much as we are by the reasoning of Circuit Judge Sibley who, although concurring in the opinion of the court as rendered by Judge Bryan, expressed doubt as to the conclusion reached, in the following words [at pages 74, 75 of 78 F.(2d)]: "I concur in this judgment, yielding to the literal words of the act and to the literal construction of them

in Burlingham v. Crouse, and Everett v. Judson. But I believe strongly that Congress intended something humanitarian, as in matters of homestead, and had in mind only individual bankrupts and insurance policies on their own lives. If a corporation should go into bankruptcy having a policy on the life of its president or of its insolvent debtor, the insured being very aged or in the last stages of an incurable disease so that it is apparent that the policy will shortly be collectible, I should hate to hold that the corporation's stockholders and not its creditors were entitled to the policy although at the date of filing the petition in bankruptcy there may have been no collectible surrender value." Still, we believe that neither Everett v. Judson, nor Burlingham v. Crouse, supra, decides the precise question. Burlingham v. Crouse merely holds that under section 70a (5) of the Bankruptcy Act, above quoted, the assignee of a policy on a bankrupt's life has the right to retain such policy on the same terms as the bankrupt might have retained it, namely, upon payment of its cash surrender value to the trustee in bankruptcy. Everett v. Judson affirms Burlingham v. Crouse, and determines that the right of the trustee to the cash surrender value of an insurance policy on the bankrupt's life is fixed as of the date of the filing of the bankruptcy petition, irrespective of subsequent events, such as the maturity of the policy by the suicide of the bankrupt, even though prior to adjudication. And to the same effect is Andrews v. Partridge, supra.

Nor do we think that such cases as Cohen v. Samuels, 245 U.S. 50, 38 S.Ct. 36, 62 L.Ed. 143, and Cohn v. Malone, 248 U.S. 450, 39 S.Ct. 141, 63 L.Ed. 352, have any direct bearing upon the trustee's right in the present case to claim the policy as an asset of the bankrupt's estate. They merely deal with the effect of a clause in the policy giving the insured power to change the beneficiary.

More than two years prior to its decision in the Curtis Case the Circuit Court of Appeals for the Fifth Circuit, in the case of Lincoln National Life Insurance Co. v. Scales, 62 F.(2d) 582, dealt with a closely related question. There the court held that a life insurance policy carried by a bankrupt corporation upon the life of one of its officers and a large stockholder who, as the court found, had no right in the policy,

passed to the corporation's trustee in bankruptcy, notwithstanding the fact that the policy at the time of the petition in bankruptcy had no cash surrender value. In the course of its opinion the court made the following statement (page 584) : "The life insurance policies which are made redeemable have been held to be those only which an individual bankrupt has on his own life payable to his estate or his representatives." In support of this statement, the court cites cases which, however, upon examination, are found not to be decisive of the point, because in each of them the bankrupt was in fact the beneficiary named in the policy. In none of them does the court deal with a situation where some one other than the bankrupt was the beneficiary. The above-quoted statement is in effect repudiated by the Fifth Circuit Court of Appeals in the Curtis Case, as evidenced by the following quotation from the opinion in that case, (78 F.(2d) 73, at page 74) : "Appellants also cite our case of Lincoln National Life Ins. Co. v. Scales, 62 F.(2d) 582, 584. But, clearly, it lends no support to their contention. The opinion stated, it is true, that 'the life insurance policies which are made redeemable have been held to be those only which an individual bankrupt has on his own life payable to his estate or his representatives,' citing some of the cases just above referred to; but, without agreeing that this was a correct statement of the law, and wholly aside from it, the opinion proceeds to hold simply that no one except the bankrupt is given the privilege to redeem and continue to hold the policy, and, therefore that Wright, as he was not the bankrupt, was not entitled to pay the surrender value and take the policy. In that case the policy was held to belong to the bankrupt corporation, which had insured Wright's life for its own benefit." It is noteworthy, however, that in both the Scales Case and the Curtis Case, at the date of filing of the petition in bankruptcy the policy had no cash surrender value. Therefore, it may be said that ipso facto, regardless of other grounds, the policy was not one within the contemplation of section 70a (5) of the Bankruptcy Act, a point which further distinguishes the facts in these cases from those now before us, because it is undoubtedly true that the clear inference from Burlingham v. Crouse, supra, is that if the policy has no cash surrender value at the time of filing the petition in bankruptcy, the

trustee takes nothing. The court said (228 U.S. 459, at page 473, 33 S.Ct. 564, 568, 57 L.Ed. 920, 46 L.R.A.(N.S.) 148): "We think it was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset; *otherwise to leave to the insured the benefit of his life insurance.*" (Italics inserted.)

The various treatises on the Bankruptcy Act apparently throw no light on this precise point. See Gilbert's Collier on Bankruptcy, Fourth Edition, section 1497, where the most we find is broad language, thus: "In effect, the bankrupt may retain the advantage which years of premiums may have given him, provided he pays or secures to the estate the cash surrender value of the policy." See, also, Remington on Bankruptcy (3d Ed.) § 1243.

Finally then, the law, as we find it from the cases which embrace facts most analogous to those in the present case, may be briefly restated as follows: (1) Supreme Court decisions: If the policy has no cash surrender value at the date of filing the petition in bankruptcy, the bankrupt's trustee has no right to the policy. However, in every case in the Supreme Court where this has been decided, the bankrupt was the assured. (2) Lower federal court decisions: In the Fifth and Ninth Circuits, if the bankrupt is the beneficiary, and the assured has no rights in the policy, then, even though it has no cash surrender value the policy passes to the bankrupt's trustee. (See, in addition to Fifth Circuit cases above discussed, Clements v. Coppin, 61 F.(2d) 552, C.C.A.9th Circuit). Contra, however, in the Fifth Circuit, in the case of a policy in which, although it had no cash surrender value, a wife was the beneficiary, and the husband, the owner of the policy, had made an absolute assignment of it to her before she filed a petition in bankruptcy—a conclusion which, for the reasons already fully given, we are not disposed to treat as governing our decision in the present case.

Summarizing our conclusions, we find that the referee was correct in holding that the policy belonged to the bankrupt's trustee for the benefit of his creditors and not to the bankrupt himself, and that therefore, the referee was correct in permitting the trustee to sell it for the benefit of the bankrupt's creditors. Accordingly, an order will be signed affirming the referee's action.