## MALONE v. COHN.

### (Circuit Court of Appeals, Fifth Circuit.  November 3, 1916.)

### Nos. 2939, 2940.

1. INSURANCE ☞586, 587—LIFE INSURANCE—RIGHT OF BENEFICIARY.

    Under Civ. Code Ga. 1910, § 2498, declaring that the insured may direct the money to be paid to his personal representative, or to his widow, or children, or his assignee, and upon such direction given and assented to by the insurer, no other person can defeat the same, a wife, designated as beneficiary of life policies, which reserved to the insured the right to change the beneficiary, has no vested and indefeasible interest in the policies, though the designation was assented to by the insurer, which will prevent the insured from subsequently changing the beneficiary.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1469, 1470; Dec. Dig. ☞586, 587.]

2. BANKRUPTCY ☞143(12)—RIGHT OF TRUSTEE—INSURANCE POLICY.

    Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (Comp. St. 1913, § 9654), declares that the trustee shall be vested by operation of law with the title of the bankrupt to all property which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him, provided that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or his personal representatives, he may, within 30 days after the surrender value has been ascertained, pay or secure to the trustee the sum so ascertained, and continue to own, hold, and carry such policy free from the claims of creditors. Insurance policies on the life of a bankrupt, having a cash surrender value, designated his wife as beneficiary, but the bankrupt was authorized to change the beneficiary, and the wife had no vested right. *Held*, that as the beneficiary could be changed by the bankrupt and he could in that way obtain their surrender value, the right to such policies or their surrender value passed to the trustee.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 201; Dec. Dig. ☞143(12).]

3. BANKRUPTCY ☞143(12)—INSURANCE POLICIES—RIGHTS OF TRUSTEE.

    Where a life policy, authorizing change of beneficiary by insured, though not fixing a cash surrender value, declared that cash loans might be obtained by the insured on the sole security of the policy, such policy is so completely under the dominion of the insured that on his bankruptcy it is an asset passing to his trustee, though the insured upon paying the trustee the loan value of the policy, may retain it free from the claims of creditors; the purpose of the proviso in the section being to enable bankrupts to continue in force insurance on their lives and to free the estate from difficulties in continuing such insurance.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 201; Dec. Dig. ☞143(12).]

Petitions to Superintend and Revise from the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

In the matter of the bankruptcy of A. S. Cohn.  Petition by R. A. Malone, as trustee in bankruptcy, to superintend and revise a decree

denying the right of the trustee to policies of insurance on the life of the bankrupt. Petitions granted, and decrees reversed.

Alexander Akerman and Chas. Akerman, both of Macon, Ga., and Sam S. Bennet, of Albany, Ga., for petitioners.

George S. Jones, of Macon, Ga., and I. J. Hofmayer, of Albany, Ga., for respondent.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. At the time the petition in bankruptcy was filed and when the adjudication of bankruptcy was made there were in existence three policies of insurance on the bankrupt's life, two in the Penn Mutual Life Insurance Company, issued, respectively, in 1902 and 1905, and one in the New York Life Insurance Company, issued in 1902. At that time the bankrupt's wife was the beneficiary of each of the policies. By the terms of each of the policies the assured, the bankrupt, had the right, at any time during the continuance of the policy, to change the beneficiary if the policy was not then assigned. By the terms of the Penn Mutual policies each of them had a present stated "loan or cash surrender value." The New York Life policy did not, in terms, provide for a "cash surrender value" during the 20-year accumulation period of the policy, but provided that stated "cash loans can be obtained by the insured on the sole security of this policy on demand at any time after this policy has been in force two full years, if premiums have been duly paid to the anniversary of the insurance next succeeding the date when the loan is made." The petitions to superintend and revise bring into question decrees to the effect that the trustee in bankruptcy was not entitled to either of the policies, or to be paid the cash value thereof.

[1] In the District Court the view prevailed that a Georgia statute has such effect as to deprive the policies in question, after the bankrupt's wife was named as the beneficiary thereof, of the qualities of property to which the trustee in bankruptcy is entitled under section 70a of the Bankruptcy Act. The statute to which such effect is attributed is section 2498 of the Georgia Code of 1910, which reads as follows:

"The assured may direct the money to be paid to his personal representative, or to his widow, or to his children, or to his assignee; and upon such direction given, and assented to by the insurer, no other person can defeat the same. But the assignment is good without such assent."

[2] We have the authority of the Supreme Court of Georgia for saying that the original enactment of this provision was but a statutory adoption of a proposition announced by the Supreme Court of Georgia in the case of Grenville v. Crawford, 13 Ga. 355, which was decided not long before that enactment was made. Smith v. Head, 75 Ga. 755, 758. In the case of Grenville v. Crawford it appeared that the insured in a life policy assigned it to his creditor, accompanied by a stipulation that should he die before the secured debt was paid the assignee was to hold the policy as collateral security for the debt and

turn over the balance to the insured's widow. The insured died, leaving the whole of the secured debt unpaid. The claim of his administrator asserted in the suit was that, "the intestate being entitled to redeem the policy by the payment of the secured debt during his lifetime, the same right descends to his legal representative," and that such representative was entitled to the surplus left after paying the secured debt. This contention was overruled, the court deciding that the insured's widow, and not his personal representative, was entitled to the residue of the amount collected on the policy left after the satisfaction of the secured debt. Nothing in the terms of the statute, especially when they are considered in the light of the circumstances of its enactment, indicates that it had any other purpose or effect than to deny to any one-other than the assured himself the power to defeat a direction by him to pay to his personal representative, or to his widow, or to his children, or to his assignee, the money payable in a life policy issued to him. The provision does not purport to make every such direction by the assured irrevocable by him, or to invalidate a stipulation in a life policy, giving the assured the right to change the beneficiary at any time during the continuance of the policy. The statute puts a direction by the assured to pay to his widow on the same footing as one to pay to his assignee. If a policy is assigned as security for a debt which the assured pays during his life, certainly the statute is not to be given the effect of putting it out of the power of the assured to change the beneficiary upon the reassignment of the policy to him by the satisfied creditor. Nothing in its terms justifies giving it a different operation or effect in the case of a direction to pay to the widow. We are not of opinion that the provision quoted had the effect of conferring on the bankrupt's wife, as the result of her having been named as the beneficiary, a vested and indefeasible interest in policies by the terms of which the beneficiaries could be changed by the bankrupt at any time.

"The trustee of the estate of a bankrupt, upon his appointment and qualification * * * shall * * * be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets." Bankruptcy Act, § 70a.

Under the terms of this section if an existing policy on the life of the bankrupt confers upon him a property interest which prior to the filing of the petition he could by any means have transferred, the trustee is entitled to the policy or its surrender value. Under such policies as those here in question the interest of one who happens to be the beneficiary at the time the bankruptcy of the assured occurs is al-

together contingent, being subject to be extinguished at any time by the assured, the bankrupt, exercising his right to realize on the policy or to continue it with a newly designated beneficiary, just as he may choose. The bankrupt's complete dominion over such a policy makes it his, and it passes, with the rest of his property, to his trustee, subject only to the right conferred on the bankrupt by the proviso to the section just quoted. In re Herr, 182 Fed. (D. C.) 716; In re Bonvillain (D. C.) 232 Fed. 370; Collier on Bankruptcy (9th Ed.) 1014. It is not fairly open to question that, prior to the filing of the petition in bankruptcy, so far as the two Penn Mutual policies were concerned, means were available to the bankrupt of realizing on the policies himself or of transferring them to some one other than his wife. ·

[3] The New York Life policy, equally with the Penn Mutual policies, is so completely under the dominion of the bankrupt as to make it an asset which passed to his trustee. Does its failure expressly to provide for a present cash surrender value stand in the way of the bankrupt acquiring the right to hold, own, and carry the policy by paying or securing to the trustee an ascertained sum of money? The failure of the policy to provide expressly for a present cash surrender value does not have this effect if in fact it has such a value by the concession or practice of the company issuing it. Hiscock v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771. A main purpose of the proviso to section 70a was to enable the bankrupt to keep alive insurance on his life in force at the time of his bankruptcy by paying or securing to the trustee the amount in cash presently realizable by him from the insurer on his policy or policies. In the opinion in the case of Burlingham v. Crouse, 228 U. S. 459, 472, 33 Sup. Ct. 564, 567 (57 L. Ed. 920, 46 L. R. A. [N. S.] 148), speaking of this provision, it was said:

"Congress undoubtedly had the nature of insurance contracts in mind in passing section 70a with its proviso. Ordinarily the keeping up of insurance of either class would require the payment of premiums perhaps for a number of years. For this purpose the estate might or might not have funds, or the payments might be so deferred as to unduly embarrass the settlement of the estate. Congress recognized also that many policies at the time of bankruptcy might have a very considerable present value which a bankrupt could realize by surrendering his policy to the company. We think it was this latter sum that the act intended to secure to creditors by requiring its payment to the trustee as a condition of keeping the policy alive. In passing this statute Congress intended, while exacting this much, that when that sum was realized to the estate the bankrupt should be permitted to retain the insurance which, because of advancing years or declining health, it might be impossible for him to replace. It is the twofold purpose of the Bankruptcy Act to convert the estate of the bankrupt into cash and distribute it among creditors and then to give the bankrupt a fresh start with such exemptions and rights as the statute left untouched. In the light of this policy the act must be construed. We think it was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset; otherwise to leave to the insured the benefit of his life insurance."

In view of the policy evidenced by the proviso it cannot be supposed that it was contemplated by the lawmakers that the privilege extended to the bankrupt of retaining his insurance by paying or securing to the trustee the present value which it has was to be withheld because of

the fact that the amount of that value is obtainable by him from the insurer on the conditional surrender of his policy as the sole security for a loan of the amount, instead of being obtainable from that source only upon an unconditional surrender of the policy. The concern of the trustee is to get the present value of the policy if it is one having such a value, and it seems altogether immaterial how the bankrupt acquires the amount necessary to be paid or secured by him, whether from the insurer or from some other source. The manifest purpose being to enable the bankrupt, when he has insurance on his life possessing a present value realizable by him, to satisfy the trustee's claim in that regard by paying or securing to him the amount of that value, we are of opinion that a policy is to be regarded as one having a cash surrender value within the meaning of the statute when it stipulates for a present value made payable by the insurer on the conditional surrender of the policy as the sole security for a loan of the amount, instead of on its unconditional surrender.

Our conclusions are that each of the policies mentioned passed to the trustee, but, as to each of them, subject to the right of the bankrupt to retain or reclaim it by paying or securing to the trustee the sum which the policy by its terms made available to him at the time of the bankruptcy as a cash asset. It follows that the petitions to superintend and revise should be granted and the decrees complained of reversed; and it is so ordered.