RICHTER et al. v. ROCKHOLD.

SAUL et al. v. SAME.

(Circuit Court of Appeals, Fifth Circuit.    November 11, 1918.)

Nos. 3167, 3168.

1. BANKRUPTCY ⬥⇒136(2)—SUMMARY ORDER—WHAT CONSTITUTES.

An order directing the bankrupt to pay or secure to the trustee the cash surrender value of insurance policies providing for change of beneficiary *held* not a summary order against the beneficiary named; the order not purporting to affect her rights.

2. BANKRUPTCY ⬥⇒143(12)—INSURANCE POLICIES—RIGHTS OF TRUSTEE.

Where a life policy provided for change of beneficiary and recognized a loan value, though the insurer declined to pay or recognize a cash surrender value, *held* that, as it appeared there was little, if any, difference between the loan and cash surrender value, an order directing the bankrupt to pay or secure same to trustee was proper, for the bankrupt could secure the surrender value from the company, etc.

Petition to Superintend and Revise from the District Court of the United States for the Northern District of Texas; George W. Jack, Judge.

In the matter of the bankruptcy of Jacob Richter. Petition by the bankrupt and another to superintend and revise an order affirming an order of the referee requiring the bankrupt to pay or secure to George F. Rockhold, trustee, the cash surrender value of insurance policies. Likewise a petition to superintend and revise a similar order made in the bankruptcy of Morris Saul. Orders affirmed.

W. T. Henry, of Dallas, Tex. (Sam Leake, of Dallas, Tex., on the brief), for petitioners.

Julius H. Runge, of Dallas, Tex., for respondent.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

BATTS, Circuit Judge.   Petitions to superintend and revise in the two cases present the same question, and will be disposed of by consideration of the case of Richter.

The petition is for revision of an order affirming an order of the referee requiring the bankrupt, within 30 days, to pay or secure to the trustee the cash surrender value of two insurance policies, and providing that, if this value (fixed by the order) were so paid, the policies should be delivered to him, and that otherwise they should pass to the trustee as assets of the estate.   It was provided that—

"A copy of this order be given by mail to the bankrupt, to his wife, Bella Richter, and to the New York Life Insurance Company for their observance."

[1] The order complained of cannot be considered a summary order against Bella Richter.   She is named as beneficiary in a policy, under the terms of which the beneficiary may be changed.   Whether her rights be as in a policy in which the right to change is not retained, subject to be defeated, or be inchoate or in expectancy, the

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

order cannot have the effect, and does not purport to have the effect, of affecting these rights.

[2] The policy allows a change of beneficiary, and provides "a loan value," but does not refer to "a cash surrender value." The company issuing the policy declines to pay or recognize a cash surrender value.

In Hiscock v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771, the cash surrender value was not provided for in the policy, but was recognized by the insurance company. So in Cohen v. Samuels, 245 U. S. 52, 38 Sup. Ct. 36, 62 L. Ed. 143. In the opinion in Malone v. Cohn, 236 Fed. 882, 150 C. C. A. 144, by this court, the question is asked: Does its failure to expressly provide for a present cash surrender value stand in the way of the bankrupt acquiring the right to hold, own, and carry the policy by paying or securing the trustee an ascertained sum of money? And, arguing the negative, the court cites Hiscock v. Mertens, to the effect that—

"The failure of the policy to provide expressly for a present cash surrender value does not have this effect, if, in fact, it has such a value by the concession or practice of the company issuing it."

There was, however, in the case no evidence of any concession or practice of the company recognizing a cash surrender value.

So far as appears, however, no case has, in terms, held that where the policy does not provide for a cash surrender value, and there is no concession or practice of the company recognizing it, and there is a refusal of the company to pay the cash surrender value, or to otherwise recognize its existence, the provisions of section 70a of the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 565 [Comp. St. 1916, § 9654]) may nevertheless be made to apply. This question is now distinctly presented.

The testimony of an actuary, called as a witness in this case, was to the effect:

"That, in the business of life insurance, there is no difference between the loan value and the surrender value of life insurance policies, except a slight difference in the method of computation. * * * The basis of the computation of the cash surrender value of the policy and the loan value is the same, both being based on the reserve, and the loan and cash surrender value are equivalent."

A differentiation is made by a witness connected with the insurance company issuing the policy. Among his answers to interrogatories is the following:

"Payment of the cash surrender value of the policy by the company completely terminates the policy and all insurance benefits thereunder; but, after a loan is made on the policy, the insurance thereunder may be, and is usually, continued by the payment of the same premium, with interest on the loan; in the event of the death of the insured, or the maturity of the policy, the loan is deducted from the amount payable on the policy."

Whether or not a company, by its policy or otherwise, recognizes a cash surrender value, the value exists. If there is a difference between the loan value and the cash surrender value, the difference would, ordinarily, be in favor of the latter. By payment of the cash

surrender value, the company escapes all future liability. The value to the company is there, and what it amounts to in dollars is a matter of ascertainment by computation, if it is not indicated by the policy. It is a value that has been created by and from the business or estate of the bankrupt, and his creditors are entitled in law and good morals to the benefit of it. On the other hand, the creditors having received this value, there can be no reason why the bankrupt should not get the benefit of life insurance which he might not at that time be able to secure, and at a premium rate less than would be demanded upon a new policy.

It is within the rights and the ability of the bankrupt to secure from the life insurance company the amount required by the order to continue his policy, and if he does not pay the cash surrender value, as legally and properly ascertained, the referee should take such steps as may be necessary and proper to secure for the creditors the benefit of the asset evidenced by the policy.

The orders sought to be revised are confirmed.