### In re CHANDLER et al.

(District Court, E. D. Pennsylvania. June 12, 1923.)

### No. 7166.

1. **Bankruptcy ⊂⊃143(12—Rights of trustee under bankrupt's insurance policies.**
    Where a bankrupt, who holds insurance policies having a cash surrender value, fails to pay or secure such value to the estate, and the policies pass to his trustee as assets, under Bankruptcy Act, § 70a (Comp. St. § 9654), the trustee takes the same, as between him and the insurance company, in the same condition as they were held by bankrupt, subject to the terms of the contract.
2. **Bankruptcy ⊂⊃143(12)—Trustee entitled to recover surrender value of insurance policies only in accordance with the terms of bankrupt's contract.**
    Where life insurance policies of a bankrupt, which passed to his trustee as assets under Bankruptcy Act, § 70a (Comp. St. § 9654), had

lapsed for nonpayment of premiums, and were being kept in force by the company in accordance with their terms by applying the surrender value to the payment of premiums, which application was continued after the bankruptcy, the company is liable to the trustee only for the surrender value at the date of the trustee's demand therefor.

In Bankruptcy. In the matter of Frederick T. Chandler and others, bankrupts. On review of order of 'referee. Modified.

Paul Freeman, of Philadelphia, Pa., for petitioners.

J. Howard Reber, of Philadelphia, Pa., for trustee.

THOMPSON, District Judge. On July 6, 1917, three policies of life insurance, each in the sum of $5,000, were issued by the Penn Mutual Life Insurance Company of Philadelphia to Edward S. Little, one of the bankrupts. In one policy his son, and in each of the other two his daughter, were named as beneficiaries. In each of the policies was a clause reserving to the insured the right to change the beneficiary, a clause providing for cash surrender value in amounts ascertainable under tables contained therein, and a clause providing for extended insurance after default in payment of premiums. On January 6, 1921, the premiums not having been paid, the policies lapsed, and the insurance company extended them under their terms, applying the surrender value to the payment of premiums.

A petition in involuntary bankruptcy was filed July 26, 1921, and on August 17, 1921, adjudication was entered. A trustee was elected and qualified October 2, 1921. The cash surrender value of each of the three policies on July 26, 1921, was $345.35, or a total value of $1,-036.05. Section 70a of the Bankruptcy Act (Comp. St. § 9654) provides as follows:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets. * * * "

The bankrupt, Edward S. Little, not having taken advantage of his rights under the above proviso, the trustee on January 25, 1922, through his attorney, requested the insurance company by letter to inform him of the surrender value as of July 26, 1921, the date of filing the petition in bankruptcy. To that communication the insurance company replied on January 28, 1922, stating that the policies had lapsed for nonpayment of premiums due January 16, 1921, and were running under the extended insurance feature for their face value until September 21, 1926, at which time all value of the policies would

cease; that the cash surrender value of each on July 26, 1921, was $345.35, but the present surrender value of each at the date of the letter was $336.05, which offer would hold good for 30 days only.

The trustee, on August 16, 1922, notified the insurance company that the bankrupt did not claim his rights under the policies, and demanded the surrender value as of July 26, 1921, the date of filing the petition. The insurance company refused to pay as of that date, contending that the trustee was only entitled to $305.15 on each policy, or $915.45, the surrender value as of the date of demand, August 16, 1922. The matter having been heard by the referee, he held that the surrender value payable to the trustee by the insurance company was fixed as of the date the petition was filed, and entered a decree ordering the insurance company to pay to the trustee the sum of $1,036.05. Thereupon the insurance company filed its petition for review.

In Burlingham v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, the Supreme Court construed section 70a of the Bankruptcy Act and the effect of the proviso concerning policies of insurance on the life of a bankrupt. Although the proviso concludes with the clause, "otherwise the policy shall pass to the trustee as assets," it was held, in view of the peculiar character of property in policies of life insurance, that Congress intended the bankrupt should have the benefit of all policies, except to the extent of the actual cash surrender value, and that the latter is all that becomes vested in the trustee. Whatever property there is in the policy beyond the cash surrender value remains the property of the bankrupt. See, also, Cohen v. Samuels, 245 U. S. 50, 38 Sup. Ct. 36, 62 L. Ed. 143; Cohn v. Malone, 248 U. S. 450, 39 Sup. Ct. 141, 63 L. Ed. 352. In Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154, it was held that the date of filing the petition is the time when, as between the trustee and the bankrupt, or his legal representatives, the cash surrender value is fixed, and the cash surrender value as of that date is what the bankrupt or his legal representatives are required to pay to release the property interest of the trustee.

It is contended on behalf of the insurance company that, as no demand was made for the cash surrender value until August 16, 1922, its amount should be fixed as of that date, and not as of the time of filing the petition, for the reason that the insurance company, meanwhile, was at the expense of keeping the policies alive under the extension clause, whereby the surrender value was reduced by the premiums chargeable against the surrender value in continuing to carry the policy to the date fixed by the demand of the trustee. As between the insurance company and the bankrupt, if he had elected to pay to the trustee the cash surrender value and to surrender the policies, the diminished value at the date of surrender of the policies would be all he could recover from the insurance company.

[1] While the filing of the petition is a caveat to all the world, and, in effect, an attachment and injunction (Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866), and while, on adjudication, title to the bankrupt's property becomes vested in the trustee in actual or constructive possession, and is placed in the custody of the bankruptcy court (Mueller v.

Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405), and therefore, upon adjudication, the insurance company held for the trustee the full surrender value of the policies, which became payable to the latter, unless the bankrupt elected to pay it as of the date of filing of the petition, nevertheless the trustee, except in cases of fraud, concealment, or unlawful preference, stands in the shoes of the bankrupt, and the property which comes into his hands as assets is subject to all the equities impressed upon it in the hands of the bankrupt (Security Warehousing Co. v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789; Zartman v. First National Bank, 216 U. S. 134, 30 Sup. Ct. 368, 54 L. Ed. 418; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; In re Garcewich, 115 Fed. 87, 53 C. C. A. 510). The policies were continuing contracts, in which performance by both parties was essential. The trustee, therefore, took them cum onere. Atchison, T. & S. F. Ry. Co. v. Hurley, 153 Fed. 503, 82 C. C. A. 453; In re Daterson Pub. Co., 188 Fed. 64, 110 C. C. A. 134; Sparhawk v. Yerkes, 142 U. S. 1, 12 Sup. Ct. 104, 35 L. Ed. 915; Frederick v. Fidelity Mutual Ins. Co., 256 U. S. 395, 41 Sup. Ct. 503, 65 L. Ed. 1009; Id., 75 Pa. Super. Ct. 77; Id., 239 Fed. 125, 152 C. C. A. 167.

[2] As between the trustee and the insurance company, therefore, the trustee cannot take the benefits under the policies and avoid the obligations impressed by their terms. He took them in the same plight and condition as when held by the bankrupt, and, if the bankrupt could not recover the surrender value as of any time other than when his right was asserted, neither could the trustee. His rights rise no higher as against the insurance company than those of the bankrupt. The time at which the surrender value was so fixed, therefore, was fixed as against the trustee in the same manner as against the bankrupt. The insurance company has rights to be considered under their contract (Frederick v. Fidelity Mutual, supra), and was under no obligation to carry the policies for the trustee, except in accordance with their terms; that is, to pay over the surrender value upon notice as of the time when demand was made and the policies were tendered for surrender. It was not required to carry them indefinitely. The inquiries made of the insurance company by the trustee concerning surrender value prior to August 16, 1922, were not notice that the trustee tendered the policies for surrender or demanded the surrender value. Meanwhile the policies were being carried under the extension clause at the expense of the insurance company, and it should not be made to suffer loss for the benefit of the bankrupt's creditors. If loss is to be borne by one of two innocent parties, it must fall upon the one whose mistake or delay was the cause of the loss.

Burlingham v. Crouse and Everett v. Judson, also Andrews v. Partridge, 228 U. S. 479, 33 Sup. Ct. 570, 57 L. Ed. 929, were cases in which the controversy arose over the title to the proceeds of policies where the bankrupt insured had died after bankruptcy. The court did not, in these cases, decide the question here presented, namely, at what date the cash surrender value is fixed as between the trustee and the insurance company, when there is no claim by the bankrupt, or by his

legal representatives, under a policy matured after the date of filing the petition by reason of his death or otherwise. The insurance company had no interest in the disposition of the proceeds in either case. In the present case, if the bankrupt had elected to pay the surrender value to the trustee, the rules there announced would apply as between the bankrupt and the trustee. The policies would then remain the property of the bankrupt, who would not be limited in dealing with them. In case, however, he should desire to receive the surrender value from the insurance company, he would be in no better position than if he had not become bankrupt, but could only obtain the surrender value as of the time of the actual surrender of the policy. In this case, the bankrupt did not elect to act at all, and the policies then stood as the property of the trustee, with the right on his part to claim the surrender value, but only under the conditions of the policies.

The referee, in his opinion, and counsel for the trustee, in his argument, cited the amendment of 1910 to section 47a of the Bankruptcy Act (Comp. St. § 9631). This is not a case in which, as between the bankrupt and the insurance company, there was any secret lien, unlawful transfer, or dissipation of assets, which could have been taken advantage of by a creditor holding a lien by legal or equitable proceedings thereon, so as to prevent the insurance company from having its rights recognized strictly in accordance with the terms of the contract of insurance, and no ground has been pointed out for the application of the amendment of 1910 to the present controversy.

It is held that the trustee is entitled to recover from the insurance company only the cash surrender value as of August 16, 1922, the date of demand and notice that the bankrupt had not availed himself of his rights, to the amount of $305.15 upon each of the policies, or $915.45.

It is ordered that the order of the referee be modified accordingly.