REID v. NEW YORK LIFE INSURANCE COMPANY.

Opinion delivered April 5, 1926.

1. BANKRUPTCY—CASH SURRENDER VALUE OF LIFE INSURANCE.—Under § 70A of the Bankruptcy Act of 1898, at the time of the filing of a bankruptcy petition the cash surrender value of a policy of life insurance available to the insured passes to the trustee in bankruptcy.

2. INSURANCE—CASH SURRENDER VALUE OF LIFE POLICY.—Where a life insurance policy provided that "if the policy be not surrendered for cash or for paid-up insurance within three months after default in payment of the premium, its cash surrender value at date of default, less the amount of any indebtedness, shall automatically purchase continued insurance," etc., *held* that, before the cash surrender value of a policy could be realized or paid to a trustee, under § 70A of the Bankruptcy Act, the policy must have been surrendered to the insurance company within three months after default in payment of the premiums; otherwise the cash surrender value would have been converted into continued insurance.

Appeal from Craighead Circuit Court, Jonesboro District; *G. E. Keck,* Judge; affirmed.

*Cooley, Adams & Fuhr,* for appellant.

*Roy Penix* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

WOOD, J. This is an action instituted by M. B. Reid, trustee in bankruptcy of the estate of J. F. Meurrier, against the New York Life Insurance Company to recover the surrender value of a life insurance policy. The defense was that the plaintiff did not, within three months after the third day of December, 1923, surrender the policy and demand a cash surrender value, as it was required to do under the terms of the policy in order to entitle the insured to a cash surrender value. The facts, as shown by an agreed statement, are as follows: On December 3, 1919, the defendant issued to Joseph Meurrier a policy of life insurance in the sum of $10,000 payable to his estate. The third annual premium on the policy was not paid. The policy contained a provision to the effect that, after three full-year premiums have been paid, the insured may, at the end of

any insurance year, or within three months after any
default in payment of premium, but not later, surren-
der the policy and receive its cash surrender value
(which is designated).   The cash surrender value here
sought to be recovered amounted to $591.85.

The policy contained this further provision: "(3)   If
the policy be not surrendered for cash or for paid-up in-
surance within three months after default in payment of
premium, its cash surrender value at date of default, less
the amount of any indebtedness, shall automatically pur-
chase continued insurance from the date of default for
the face of the policy plus any dividend additions, and
less any indebtedness to the company.   The continued
insurance shall be without future participation and with-
out the right to loans or cash surrender values."

On January 1, 1924, the plaintiff wrote the defend-
ant notifying it of the filing of the petition in bankruptcy
and of the adjudication thereof and the appointment of
plaintiff as trustee.   The plaintiff, in this letter, notified
the defendant that the plaintiff had been directed by the
court to ascertain the cash surrender value of the bank-
rupt's policies of life insurance and to determine what
steps were necessary for surrendering and obtaining their
cash surrender value.

The defendant, on January 11, 1924, answered the
above letter, and stated that only one of the policies about
which inquiry was made had a surrender value, which
amounted to $591.85.   On May 21, 1924, the plaintiff
again wrote the defendant acknowledging receipt of
defendant's letter of January 11, 1924, and stating that
the plaintiff desired to surrender the policy which the
defendant had stated in its letter of January 11, 1924,
had a surrender value of $591.85.   In this letter plaintiff
requested the defendant to let plaintiff know "the nec-
essary steps to take to effect a surrender," and to send
plaintiff any forms if defendant desired the plaintiff to
execute such forms.   On January 24, 1925, the defend-
ant wrote the plaintiff acknowledging receipt of plain-
tiff's letter of May 21, 1924, and informing plaintiff that

"the time within which this policy may be surrendered has expired. It has no present cash surrender value."

The plaintiff, upon the above facts, prayed the court to declare the law to be, in effect, that the plaintiff was entitled to recover the sum of $591.85 with interest at the rate of six per cent. per annum from May 21, 1924, to date, less the cost of carrying the policy from December 3, 1923, until May 21, 1924, amounting to $72.40, and prayed the court to render judgment in its favor in the sum of $519.35 with interest at six per cent. per annum from May 21, 1924. The court rejected these prayers, to which the plaintiff duly objected and excepted. The court thereupon rendered a judgment in favor of the defendant, that the plaintiff take nothing, and that the defendant recover its cost. From that judgment the plaintiff duly prosecutes this appeal.

The appellant predicates his right to recover on § 70, subdiv. A (5) of the Bankruptcy Act of 1898 as amended, which provides, in substance, that the trustee in bankruptcy shall be vested with title to the bankrupt's property as of the date he was adjudged a bankrupt (except certain exemptions it is not necessary here to mention), and provided "that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold and own and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings; otherwise the policies shall pass to the trustee as assets."

The appellant contends that, at the time of the filing of the bankruptcy petition, the cash surrender value of the policy of insurance available to Joseph F. Meurrier passed to the appellant, the trustee in bankruptcy. This may be conceded, and it is so decided in *Burlingham* v. *Crouse,* 228 U. S. 459, where it is said: "We think it was

the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset; otherwise to leave to the insured the benefit of his life insurance." See also *Everett v. Judson,* 228 U. S. 474; *Andrews* v. *Partridge,* 228 U. S. 479. The question then recurs, what sum, if any, was available to the appellant, the trustee in bankruptcy, on October 20, 1923, the day when Meurrier was adjudged a bankrupt and the appellant was appointed the trustee in bankruptcy of his estate? On that day the agreed statement of facts shows that one of the bankrupt's policies of insurance had a cash surrender value of $591.85, the amount in controversy, and that on that day this policy was surrendered to the appellant, the trustee, as a part of the assets of the bankrupt's estate. The issue then, in its final analysis, is whether or not the above sum, under the terms of the policy, was available to the bankrupt on that day. This issue must be determined by the provisions of the third subdivision of the contract of insurance set out above, to-wit: "If the policy be not surrendered for cash or for paid-up insurance within three months after default in payment of premium, its cash surrender value at date of default, less the amount of any indebtedness, shall automatically purchase continued insurance from the date of default for the face of policy plus any dividend additions and less any indebtedness to the company. The continued insurance shall be without future participation and without the right to loans or cash surrender values."

Now, the trustee in bankruptcy, upon his appointment and qualification, acquired no other or greater right of title in the cash surrender value of the policy under the provisions of § 70A (15) of the Bankruptcy Act of 1898 than was possessed by the bankrupt himself at the time he was adjudged a bankrupt. As is said in *New York Mfg. Co.* v. *Casswell,* 201 U. S. 344: "Under the provisions of the bankrupt act the trustee in bankruptcy is vested with no better right or title to the bankrupt's property than belonged to the bankrupt at the time when

the trustee's title accrued. The seizure by the court of bankruptcy did not operate as an attachment nor as a lien upon the property. The trustee under such circumstances stands simply in the shoes of the bankrupt, and, as between them, he has no greater right than the bankrupt. In other words, where no rights of creditors have attached, under the local law the trustee in bankruptcy takes no higher title than the bankrupt had.'' See also *In re Wade,* 185 Fed. 664. The adjudication in bankruptcy did not *ipso facto* render available the cash surrender value of the policy to the bankrupt nor to the trustee. To make that sum available, either the insured, the bankrupt, or the trustee, who stood in his shoes, had to comply with the provisions of the contract of insurance which were conditions precedent to the availability or then payment of the cash surrender value. Under the express provisions of the policy, before the cash surrender value thereof could be realized or paid to the bankrupt or to the trustee in bankruptcy, the policy had to be surrendered to the insurance company within three months after the default in the payment of the premiums. This was not done by the bankrupt himself nor by the trustee in bankruptcy. Not having been done, again the rights of the parties, in such eventuality, were clearly fixed by the terms of the contract between them, to-wit: Upon a failure to surrender the policy at the expiration of three months after default in payment of premiums, the cash surrender value at that date automatically was converted into continued insurance as therein specified, and the surrender value was thus absorbed, and, under the terms of the policy, thereafter there was no surrender value.

What was said *In re Chandler,* 290 Fed. 988, upon the facts of that case, is equally applicable here: ''While the filing of the petition is a caveat to all the world, and, in effect, an attachment and injunction, and while, on adjudication, title to the bankrupt's property becomes vested in the trustee in actual or constructive possession, and is placed in the custody of the bankruptcy court, and therefore, upon adjudication, the insurance company held

for the trustee the full surrender value of the policies, which became payable to the latter, unless the bankrupt elected to pay it as of the date of filing of the petition, nevertheless the trustee, except in cases of fraud, concealment, or unlawful preference, stands in the shoes of the bankrupt, and the property which comes into his hands as assets is subject to all the equities impressed upon it in the hands of the bankrupt. The policies were continuing contracts, in which performance by both parties was essential. The trustee therefore took them *cum onere*. As between the trustee and the insurance company therefore, the trustee cannot take the benefits under the policies and avoid the obligations impressed by their terms." See also *Frederick* v. *Fidelity Mutual Life Ins. Co.,* 256 U. S. 395.

It follows that the appellant, having failed to comply with the provisions of the contract of insurance in order to make available the cash surrender value thereof at the time same had a cash surrender value, and having delayed to comply with the terms of the policy until the cash surrender value was absorbed and passed into other values and rights of the parties to the contract of insurance, there is no liability against the appellee for such cash surrender value, because, at the institution of the action, there was none. The trial court ruled correctly in so holding, and its judgment is therefore affirmed.