## In re GREENSPAN.
### No. 58632.

District Court, S. D. New York.
May 22, 1934.

Samuel Newfield, of New York City, for trustee.

David Rudin, of New York City, for bankrupt.

## PATTERSON, District Judge.

The question in this case is the trustee's rights in an insurance policy held by the bankrupt.

In 1919 the bankrupt took out a $2,000 twenty-year endowment policy of the Equitable Life Assurance Society. Since 1927 the beneficiary has been the bankrupt's executors, administrators, or assigns. Default in the payment of premiums occurred on April 23, 1933, some seven months before bankruptcy on November 25, 1933. At the time of default, there was a substantial cash surrender value. The policy provides that on default in payment of premiums the insured may elect one of three options: (1) To receive the cash surrender value; (2) to purchase paid-up endowment insurance; or (3) to continue the insurance as paid-up extended term insurance for a period shown in a table appearing in the policy. The policy further provides that, in case the insured does not select any option within three months of default, the insurance shall be continued under the third option. The bankrupt made no election, and accordingly at the time of bankruptcy the policy was being continued as extended term insurance to continue in force till August 23, 1937.

The bankrupt listed the policy in his schedules, at first claiming no exemption. The trustee in bankruptcy wrote a letter of inquiry to the insurance company as to this policy and two others. In reply, the company wrote a letter dated February 23, 1934, in which the following paragraph dealt with this policy: " * * * This extended term insurance makes no provision for the payment of a cash surrender value. However, if the policy were duly surrendered to the Society, properly released by all parties at interest, the Society would be willing to make an allowance for surrender. For example, as of February 28, 1934 the Society would be willing to make an allowance of $385.10 for surrender. If the policy had been surrendered to the Society on November 25, 1933, properly released by all parties at interest, the Society would have been willing to make an allowance of $387.10 for surrender. The amount which the Society is willing to allow for surrender of extended term insurance decreases as the policy approaches the end of the extended term period. The calculation as of November 25, 1933 was made for your convenience and does not, of course, represent the present status of the policy."

The matter was brought before the referee. The trustee claimed that the policy had a cash surrender value at the time of bankruptcy and that he was entitled to such value. The bankrupt contended that there was no cash surrender value at bankruptcy; the policy having already lapsed and the insurance having been converted into extended term insurance. The referee ruled in favor of the bankrupt, and held that the trustee had no interest in the policy. I am of opinion that his decision was erroneous.

By force of section 70a of the Bankruptcy Act (11 USCA § 110 (a), the trustee is entitled to the cash surrender value, and no more, on insurance policies on the bankrupt's life that are payable to the bankrupt's estate and are not exempt by state law. Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148; Everett v. Judson, 228 U. S. 474, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154. This policy is payable to the bankrupt's own estate, and is not exempt under any New York statute. The sole point then is whether it had a cash surrender value at the time of bankruptcy. On its face it had none. The time when the bankrupt might have demanded payment of the cash surrender value as matter of right under the express provisions of the policy had expired some months before bankruptcy. The policy was then outstanding only as a paid-up extended term policy, for which no surrender value was specified. If this were all, the trustee would have no standing.

But the letter from the insurance company to the trustee shows that by concession and practice of the company the policy actually had a cash surrender value at bankruptcy and has had such a value ever since. By the letter the company offered to pay $385.10 for surrender of the policy on February 28, 1934. That this was a calculated amount and not a chance offer for this particular policy is clearly indicated by the reference to values at oth-

584

er dates. That it is a regular practice of the company to pay a cash value on surrender of policies in the same status as this policy is revealed by this sentence: "The amount which the Society is willing to allow for surrender of extended term insurance decreases as the policy approaches the end of the extended term period."

Policies with a cash surrender value, within the meaning of section 70a, are not confined to policies in which a cash surrender value is expressly stated, but include policies having a cash surrender value by concession or practice of the company issuing them. The Supreme Court so intimated in Holden v. Stratton, 198 U. S. 202, 25 S. Ct. 656, 49 L. Ed. 1018, and so decided in Hiscock v. Mertens, 205 U. S. 202, 27 S. Ct. 488, 51 L. Ed. 771. The rule has been reiterated in Burlingham v. Crouse, supra, at page 471 of 228 U. S., 33 S. Ct. 564, and in Cohen v. Samuels, 245 U. S. 50, at page 53, 38 S. Ct. 36, 62 L. Ed. 143. In the lower courts the cases are to the same effect. In re Coleman, 136 F. 818 (C. C. A. 2); In re White, 174 F. 333, 334, 26 L. R. A. (N. S.) 451 (C. C. A. 2); In re Herr, 182 F. 716 (D. C. Pa.); Malone v. Cohn, 236 F. 882 (C. C. A. 5), affirmed in 248 U. S. 450, 39 S. Ct. 141, 63 L. Ed. 352; Richter v. Rockhold, 253 F. 941 (C. C. A. 5); In re Samuels, 254 F. 775 (C. C. A. 2); In re Chandler, 290 F. 988 (D. C. Pa.). See, also, Remington on Bankruptcy, § 1259. The Chandler Case is one where the policy had become one for paid-up extended term insurance and is directly in point as to the facts. In the White Case, supra, Judge Ward said: "Besides this, though not obliged by the contract to do so, the company is willing, apparently, under the option given the insured to surrender the policy for paid-up insurance or other value, to pay the sum of $1,804.23 upon its surrender. The situation is exactly the same as if the policy contained a stipulation for a cash surrender value. Hiscock v. Mertens, 205 U. S. 202, 27 S. Ct. 488, 51 L. Ed. 771."

The policy in question had a cash surrender value within the meaning of section 70a, and the trustee is entitled to surrender the policy to the company and obtain such value unless the bankrupt shall himself pay the appropriate amount to the trustee and thus redeem the policy. The amount which the company will pay will depend on the date of surrender. In re Chandler, supra. The order of the referee will accordingly be reversed.